ASTEC INDUSTRIES, INC. and Barber–Greene Company, Appellants,

v.

Juana Irma SUAREZ, Individually and as Surviving Spouse of Hector Suarez, and as Administratrix of the Estate of Hector Suarez, Deceased, and as Next Friend of Juan Carlos Suarez and Hector Hugo Suarez, Minors; and Susana Medina Juarez, Individually and as Surviving Spouse of Joaquin Juarez, Deceased; and Leopoldo Juarez, Appellees.

No. 2–95–046–CV.

Court of Appeals of Texas, Fort Worth.

April 11, 1996.

Rehearing Overruled June 6, 1996.

---

William L. Latham, David W. Kirkman and Gary E. Steffen, McDonald Sanders, P.C., Fort Worth, Jeff Hollingsworth, Stophel & Stophel, Chattanooga, Tennessee, for Appellants.

Kevin A. Byrne, Kugle & Frederick, Fort Worth, H. Dustin Fillmore, The Fillmore Law Firm, P.C., Fort Worth, H.G. Wells, Wells, Williford & Felber, Fort Worth, Malcolm McGregor, El Paso, for Appellees.

Before CAYCE, C.J., and DAUPHINOT and CHUCK MILLER (Assigned), JJ.

## OPINION

DAUPHINOT, Justice.

Appellants Astec Industries, Inc. and Barber–Greene Company appeal the trial court's judgment entered against them, based on a jury finding that Appellants' failure to warn was the producing cause of an incident that left two workers dead. In five points of error, Appellants complain that the trial court erred in entering judgment for the plaintiffs because the statute of repose extinguishes the plaintiffs' wrongful death claims, the first jury to hear the case answered the questions such that Appellants are entitled to judgment, and the evidence is insufficient to find that Appellants' failure to warn was the producing cause of the accident. Because we find that Appellants are not entitled to the statute of repose defense, that the trial judge properly discharged the jury in the second trial without rendering a judgment, and that the evidence was sufficient, we affirm.

## PROCEDURAL AND FACTUAL HISTORY

The record reflects that Barber–Greene manufactured equipment for use in the production of asphalt. This equipment, referred to as a "material handling system," contained a large hopper covered by a grate such that trucks loaded with aggregate could drive over the hopper and dump their aggregate through the grate and into the hopper. The hopper was designed to be supported by fastening its edges or flanges to the concrete pit. As part of the system, the hopper would feed small amounts of aggregate onto a conveyor belt that would then move the aggregate into stockpiles. The aggregate would be held in the stockpiles until needed in the manufacturing of asphalt.

The material handling system was initially sold by Barber–Greene to its dealer, Berry Brothers Machinery, Inc. SRO Paving, Inc. then purchased the system from Berry and it was installed in their asphalt plant in the early 1970s. In 1988, SRO sold the plant and its asphalt business to J.L. Bertram Construction and Engineering, Inc. Also, Astec acquired Barber–Greene as a wholly-owned subsidiary, assuming all its liabilities.

The incident which forms the basis of these wrongful death actions occurred on September 11, 1989. Joaquin Juarez and Hector Suarez, both employed by Bertram, went into the pit below the hopper to start a pump that was used to remove accumulated water. The flange supporting the hopper gave way. The hopper fell on Juarez and Suarez, burying and, ultimately, killing the two employees. Both families sued Barber–Greene, Astec, Bertram, and SRO, asserting gross negligence against Bertram, negligence against SRO, and products liability against Astec and Barber–Greene. In the first trial, the court granted summary judgment for Astec and Barber–Greene based upon their statute of repose affirmative defense. This court, however, reversed the trial court in an unpublished opinion, remanding the case back to the trial court. That trial, the second, ended in a mistrial as the jury failed to reach a complete verdict. Before the case could be tried again, Bertram and SRO settled with the plaintiffs. Without those two defendants, the case went back to trial in September of 1994. This time the jury found that Appellants' failure to warn was the producing cause of the incident and judgment was entered for the plaintiffs.

## POINTS OF ERROR ONE, THREE, AND FIVE

In points of error one, three, and five, Appellants complain that judgment should not have been entered for the plaintiffs because the statute of repose extinguishes their wrongful death claims. Specifically, Appellants contend in point of error one that the trial court erred in failing to grant a directed verdict, disregard the jury's answer to question five, and enter a judgment notwithstanding the verdict because the evidence established as a matter of law that Appellants constructed the material handling system. In point of error five, Appellants argue alternatively that the jury's answer to question five was against the great weight and preponderance of the evidence. Appellants' final point based on the statute of repose defense is point of error three, in which, they complain that the trial court erred in failing to grant a directed verdict in their favor in

the second trial because they were entitled to judgment as a matter of law under the statute of repose.

The statute of repose, upon which Appellants rely, is codified at section 16.009 of the Civil Practice and Remedies Code and states:

> A claimant must bring suit for damages for [personal injury and other injuries] against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.[1]

Appellants contend that they are entitled to the statute's protection because, despite the jury's answer otherwise, they constructed the hopper more than ten years before the accident, and the hopper was an improvement to real property.

In a recent 1995 opinion, *Sonnier v. Chisholm–Ryder,* the Texas Supreme Court reviewed the statute of repose provision under section 16.009.[2] The Court, in addressing a certified question from the United States Court of Appeals for the Fifth Circuit, held that a manufacturer must necessarily install the personalty to real property in order to "construct an improvement to real property":

> From the history of the act, it is consistent to hold that the act was intended to protect those who actually alter the realty by constructing additions or annexing personalty to it, not to protect those who do no more than manufacture personalty that is later transformed by third parties into an improvement.[3]

In other words, because "the statute protects those who construct or repair improvements, the statute only protects those who annex personalty to realty, not those who manufacture personalty that is used in constructing an improvement." [4]

In the case before us, there is no evidence that Appellants installed the hopper or material handling system. In fact, the deposition testimony offered at trial of Robert Landl, a Barber–Greene engineer for thirty-three years, makes it clear that Barber–Greene did not even sell the material handling system directly to SRO. Landl also testified that he did not know who installed the system. Appellants concede in their brief that, although it is "unclear" who actually installed the hopper and material handling system, "[t]he installation appears to have been under the control and direction of SRO, the owner of the property at that time."

Although the Court's decision in *Sonnier* came well after the statute of repose would have extinguished the plaintiff's claim in this case if it did apply, we still rely on *Sonnier* for authority.[5] Because the statute of repose under section 16.009 is only applicable where the manufacturer actually annexes the personalty to the real property and, thereby, creates an improvement, we overrule Appellants' points of error one, three, and five.

### POINT OF ERROR TWO

Appellants contend, in point of error two, that the trial court erred in granting a mistrial in the second trial. At the conclusion of the second trial, the judge under rule 289 of the Texas Rules of Civil Procedure discharged the jury because after two full days of deliberations the jury was still unable to answer all the questions in the charge. At the time the trial judge dismissed the jury, Appellants objected to the discharge, arguing that "we ought to keep them locked up a little bit longer and see if we can get a verdict out of them." Appellants later urged the court in both a motion for instructed

---

1. Tex.Civ.Prac. & Rem. Code Ann. § 16.009 (Vernon 1986).

2. *See Sonnier v. Chisholm–Ryder,* 909 S.W.2d 475 (Tex.1995).

3. *Id.* at 482.

4. *Id.*

5. We find that *Sonnier* must be applied retroactively because the opinion does not specify otherwise. *See Bowen v. Aetna Casualty & Sur. Co.,* 837 S.W.2d 99, 100 (Tex.1992) (decision of Supreme Court operates retroactively unless the Court exercises its discretion to modify that application).

verdict and a motion for judgment under rule 301 of the Texas Rules of Civil Procedure to grant judgment for Appellants. Appellants now argue that the jury's answers in that second trial were sufficient to require the trial court to receive the jury's partial verdict and to enter judgment for Appellants.

Appellants allege that the jury, although not answering all questions, did answer in their favor question two, which asked: "Was there a design defect in the hopper or a defect in the marketing of the hopper, at the time it left the possession of Barber–Greene Company that was a producing cause of the occurrence in question?" In their brief in support of their motion to reconsider the motions for instructed verdict and the alternative motion for judgment under rule 301 of the Texas Rules of Civil Procedure, Appellants attached the affidavit of Sandra White, presiding juror. In her affidavit White testified that, "Although we were not able to reach an agreement on all the questions submitted to the jury, we unanimously agreed in our answer to Question 2. All twelve jurors agreed that the answer to Question 2 was 'No.'"

Also, under this point, Appellants contend that the jury in the second trial answered the two questions dealing with their statute of repose defense favorably for Appellants. Based on those answers, Appellants argue that the trial judge should have accepted the partial verdict and entered a judgment that plaintiffs take nothing from Appellants. As evidence of the jury's answers, Appellants included the affidavits of eleven of the twelve jurors. The affiants testified that they each voted "Yes" to questions six and seven, which would have established Appellants' statute of repose defense.

Appellants contend that the "No" answer to question two and/or the "Yes" answers to questions six and seven required the court to enter judgment based on those answers. Appellants argue that,

> [w]here a jury returns a legally sufficient partial verdict and its answers to certain issues are of such a nature that a party is entitled to judgment no matter what the jury might have responded to the unanswered issues, it is the duty of the trial court to enter a judgment upon the verdict.[6]

Appellants' case is distinguishable from the authority they rely on in that a "legally sufficient partial verdict" was never returned by the jury to the judge in the second trial. In order for a judge's ministerial duty to render judgment under rule 300 of the Texas Rules of Civil Procedure to arise, the jury must first return a sufficient verdict for the judge to receive.[7] Generally, a judge has broad discretion to order a mistrial and to declare a new trial.[8]

In the second trial, as the trial judge was preparing to discharge the jury due to their failure to answer the questions in the charge, the judge asked the jury: "I have received from you the verdict form, but I note there is only eight signatures on that. From that, I take it that no 10 jurors could agree to the answers as set forth in there; is that correct?" Presiding Juror White responded, "Exactly." At that point, the judge, relying on both the statement made by juror White and the incomplete verdict form before him, discharged the jury.

A copy of the charge in the second trial is in the record attached to White's affidavit. The copy confirms the fact that only eight jurors signed the verdict form. Rule 292 of the Texas Rules of Civil Procedure mandates that it takes at least ten agreeing jurors to render a verdict. The rule also states that if less than the original twelve jurors render a verdict, then the verdict must be signed by each juror concurring in it.[9] Rule 293 of the Texas Rules of Civil Procedure mandates the

6. *Kroger Co. v. Hughes*, 616 S.W.2d 287, 288 (Tex.Civ.App.—Houston [1st Dist.] 1981, orig. proceeding).

7. *See Anheuser–Busch, Inc. v. Smith*, 539 S.W.2d 234, 238 (Tex.Civ.App.—Houston [1st Dist.] 1976, orig. proceeding); *Masten v. Montgomery*, 501 S.W.2d 725, 727 (Tex.Civ.App.—Amarillo 1973, orig. proceeding).

8. *Johnson v. Court of Civil Appeals*, 162 Tex. 613, 350 S.W.2d 330, 331 (1961).

9. Tex.R.Civ.P. 292.

procedure to follow when the jurors agree upon a verdict. It states that "they shall be brought into court by the proper officer, and they shall deliver their verdict to the clerk; and if they state that they have agreed, the verdict shall be read aloud by the clerk." [10]

It is clear from the record that the jury reached no such "agreement." In fact, the record indicates just the opposite: that the presiding juror expressly told the judge that no ten jurors could agree to the answers. Following this acknowledgement that a sufficient verdict could not be reached to support the rendition of a judgment, the judge used his broad discretion and discharged the jurors.[11] The ministerial duty of the trial judge to render judgment upon a sufficient verdict never arose because, very simply, a sufficient verdict was never returned. The verdict form returned by the jury did not support a rendition of judgment and, consequently, it would have been improper for the trial judge to render judgment based on the incomplete jury verdict returned. Therefore, we overrule Appellants' second point of error.

## POINT OF ERROR FOUR

■■■ Finally, in point of error four, Appellants argue that the trial court erred in failing to grant Appellants' motion for new trial because the evidence was insufficient to sustain the jury's finding that the Appellants' failure to warn caused the accident. An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.[12] We are required to consider all of the evidence in the case in making this determination and, if reversing,

to detail that evidence in the opinion.[13] Findings of fact are the exclusive province of the jury.[14] A court of appeals cannot make findings of fact, it can only "unfind" facts.[15]

In *Caterpillar v. Shears*, the Texas Supreme Court reaffirmed that "there is no duty to warn when the risks associated with a particular product are matters 'within the ordinary knowledge common to the community.'"[16] The Court went on to state that "the duty to warn is limited in scope, and applies only to hazards of which the consumer is unaware."[17]

■■■ In the case before us, the jury answered affirmatively to the question, "Was there a defect in the marketing of the hopper, at the time it left the possession of Barber–Greene Company that was a producing cause of the occurrence in question?" Before answering the question the jury was properly instructed that if the risks were obvious or if the incident was the result of improper use that would have occurred with or without a proper warning, then the failure to warn was not the producing cause.

Several expert witnesses testified at trial that the producing cause of the accident was the improper installation and maintenance of the hopper. Specifically, Landl, Ronald Kraft, owner of Kraft Engineering Inc. and hired by the plaintiffs, and Harris Marcus, a University of Texas engineering professor hired by Astec and Barber–Greene for consulting, all testified that the hopper, which had been spot welded to the top of the pit, was incorrectly installed. Additionally, Kraft, Marcus, and Donald Hurst, a plant manager for SRO and Bertram and in the construction business since 1950, opined that the accident was caused, at least in part, by a lack of maintenance on the hopper during its

10. Tex.R.Civ.P. 293.

11. *See* Tex.R.Civ.P. 289.

12. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

13. *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex.1993).

14. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744–45 (Tex.1986).

15. *Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986).

16. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex.1995) (quoting *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 388 (Tex. 1991)).

17. *Id.*

eighteen year existence at the plant. Furthermore, Marcus testified that there was rust flowing down the sides of the concrete wall.

The jury's failure to warn finding was supported by the testimony of Henry Rylander, a mechanical engineer and consultant for Astec since 1973. Rylander testified that Appellants sent *no* instructions or warnings concerning the life expectancy of the hopper. Rylander testified that he inspected the accident site twice in December of 1989 following the incident in question. He reported that the hopper was difficult, if not impossible, to visibly inspect because the flanges of the hopper were covered by a grate that could be removed only with a crane. He explained, in fact, that because he was unable to adequately visibly inspect the flanges with the grate on, he needed the second inspection to be at a time when the grate could be removed. Thus, his inspection revealed that the grate concealed the attached points of the hopper to the concrete pit. Rylander also testified that a natural build-up of aggregate on top of the supporting flanges would prevent inspection from the top.

When asked if he would have provided the purchaser of the hopper with information regarding the thickness of the supporting flange, Rylander responded that he would "make it absolutely certain that this is a wear-out type design." After testifying that the supporting flange would become critically dangerous once worn thin, Rylander stated that the purchaser of the product would probably not have knowledge of this danger unless someone told them. He further testified that the critical question was what degree of wear could be tolerated before a collapse would occur. He then stated that the manufacturer was in the best position to determine that issue and that the manufacturer should have provided this information to the end-user. We find that this testimony provides factually sufficient evidence to support the jury's finding that the Appellants' failure to warn of dangers associated with the hopper was the producing cause of the

accident.[18]  Appellants' fourth point of error is overruled.

Having overruled all of the Appellants' points of error, we affirm the judgment of the trial court.

---

**18.** We have also conducted a review of all the exhibits in this case and they, too, overwhelmingly support the jury's verdict.