Roger REAMES; Sherry Reames, a Minor; and Louise Reames, Individually and as Next Friend of Sherry Reames, a Minor, Appellants,

v.

HAWTHORNE–SEVING, INC. and Grubb Construction, Inc., Appellees.

No. 05–95–01768–CV.

Court of Appeals of Texas, Dallas.

June 13, 1997.

John M. Skrhak, Jr., Kevin T. Crocker, Looper Reed Mark & McGraw, Inc., Dallas, Mark K. O'Briant, Dallas, for Appellants.

James K. Peden, III, James A. Deets, Alan Brandt Daughtry, Strasburger & Price, L.L.P., Dallas, Mark M. Donheiser, Munsch, Hardt, Kopf, Harr & Dinan, P.C., Dallas, Michael S. Holloway, Joann N. Wilkins, Burford & Ryburn, L.L.P., Dallas, for Appellees.

Before KINKEADE, WHITTINGTON and WRIGHT, JJ.

## OPINION

KINKEADE, Justice.

Roger Reames, et al., appeal a summary judgment granted in this personal injury action in favor of Hawthorne–Seving, Inc. and Grubb Construction, Inc. based on a statute of repose requiring that certain suits against one who constructs an improvement to real property be brought within ten years after the construction of the improvement. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.009 (Vernon 1986). In six points of error, Reames, et al., argue generally that the trial court erred in granting summary judgment because (1) the conveyor belt on which Reames was injured was not an "improvement," (2) Hawthorne–Seving, Inc. and Grubb Construction, Inc. did not "construct" the conveyor belt, and (3) the statute of repose is unconstitutional because it violates the open courts provision of the Texas Constitution. For the reasons set forth below, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 1993, Roger Reames was injured on a conveyor belt while working for Marazzi USA, Inc. ("Marazzi") at its ceramic tile plant in Sunnyvale, Texas. Marazzi's workers' compensation carrier brought this action based on that injury in the names of Roger Reames, his daughter Sherry Reames, and his wife Louise Reames (collectively "the Reameses") as the subrogee to the Reameses' interests. Although the original petition is not in the record, the parties agree it was filed on March 31, 1994.

The conveyor belt on which Reames was injured was substantially installed at the plant in 1982, more than ten years before suit was filed in this action. In 1981 and 1982, Hawthorne–Seving, Inc. ("Hawthorne–Seving") contracted with Marazzi to install equipment in its Sunnyvale plant. Pursuant to that contract, Hawthorne–Seving designed the conveyor belt on which Reames was injured, but it is not clear who physically installed it. The parties agree, however, that Hawthorne–Seving did not perform the physical installation. Hawthorne–Seving's summary judgment evidence indicates it arranged for the construction and installation of the conveyor belt and other equipment through Tri–State Millwright Service, Inc. ("Tri–State"), making payments to Tri–State and Grubb Construction, Inc. ("Grubb"). Tri–State is not a party to this appeal. Grubb's summary judgment evidence indicates that, although it did install some equipment at the Marazzi plant in 1981 and 1982, it played no role in installing the conveyor on which Reames was injured.

Although the parties do not agree on who installed the conveyor belt, they do agree on its use. The conveyor belt was part of a system that transported powder. At Marazzi, in the process of making tile, a drying system converted raw materials into a powder that was stored and later pressed into tiles. The conveyor belt on which Reames was injured was the first of three conveyors, all of which were added to the plant at the same time, that together moved the powder from a drying system to a storage area. This first conveyor was positioned under the discharge end of the dryer. The powder fell on the first conveyor, moved along the conveyor until it was transferred to the second conveyor, then to the third conveyor, and eventually to a storage silo. The second and third conveyors were bolted to the floor. The first conveyor, however, was not. The first conveyor was on wheels solely because it was directly under the dryer, which needed to be cleaned regularly and could not be cleaned unless the first conveyor could be moved aside. (At times, the first conveyor was attached with pins to the second conveyor to insure proper alignment of the belts.) To provide access to the dryer, workers would push the first conveyor, or use a forklift to move it, four or five feet from its normal position. After cleaning the dryer, workers returned the conveyor to its original position. The powder used to make the tile could not be transported from the dryer to the storage silo unless the first conveyor was in place, and the first conveyor was never moved for any reason other than to provide access to the dryer.

In their second amended petition, the Reameses alleged that Hawthorne–Seving

designed, manufactured, and marketed the first conveyor belt and that Tri–State "and/or" Grubb installed the conveyor. They asserted that Hawthorne–Seving and Grubb are liable for Reames's injuries under products liability and negligence theories. Hawthorne–Seving and Grubb filed separate motions for summary judgment in which Hawthorne–Seving argued that section 16.009 of the Texas Civil Practice and Remedies Code barred the Reameses' action and Grubb argued that it was not liable because it did not install the conveyor, and that section 16.009 would bar suit against it even if it had installed the conveyor. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.009 (Vernon 1986). The trial court granted the motions without citing the grounds on which it relied.

## THE STATUTE OF REPOSE— SECTION 16.009

■ The Reameses contend the trial court erred in granting summary judgment based on section 16.009. In pertinent part, section 16.009 provides that a claimant must bring certain claims, including ones for personal injury, against a person who "constructs" an "improvement" to real property not later than ten years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the property or a deficiency in the construction of the improvement. TEX. CIV. PRAC. & REM.CODE ANN. § 16.009(a),(b) (Vernon 1986). The purpose of the statute is to protect someone who constructs or installs an improvement from facing never-ending potential liability based on that work. *See Petro Stopping Ctrs., Inc. v. Owens–Corning Fiberglas Corp.*, 906 S.W.2d 618, 620 (Tex. App.—El Paso 1995, no writ). If the statute applies, it provides a complete defense to a personal injury action based on strict products liability or negligence. *See Jackson v. Coldspring Terrace Property Owners Ass'n*, 939 S.W.2d 762, 763, 768 (Tex.App.—Houston [14th Dist.] 1997, writ requested); *Rodarte v. Carrier Corp.*, 786 S.W.2d 94, 96 (Tex.App.— El Paso 1990, writ dism'd by agr.), *overruled on other grounds by Petro Stopping Ctrs.*, 906 S.W.2d at 620.

## Is the Conveyor an Improvement?

In their first point of error, the Reameses contend the trial court erred in granting Hawthorne–Seving's and Grubb's motions for summary judgment because the first conveyor was not an "improvement" within the context of section 16.009 as a matter of law. In their second point of error, they argue that whether the conveyor was an improvement is a disputed question of material fact precluding summary judgment. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ An improvement includes all additions to the freehold except trade fixtures that can be removed without injury to the property. *Sonnier v. Chisholm–Ryder Co.*, 909 S.W.2d 475, 479 (Tex.1995). The definitions of an improvement and a fixture are often confused. The class of improvements is considered to be broader than that of fixtures, which are items of personalty that have become permanent parts of the realty to which they are affixed. *Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex.1985); *Cantrell v. Broadnax*, 306 S.W.2d 429, 432 (Tex.Civ. App.—Dallas 1957, no writ). Therefore, although all improvements are not necessarily fixtures, any fixture, unless it is a trade fixture, is considered an improvement. A trade fixture is an item, which can be removed without material or permanent injury to the freehold, that a tenant annexes to realty to enable the tenant to carry on its business. *Jim Walter Window Components v. Turnpike Distribution Ctr.*, 642 S.W.2d 3, 5 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). Because the parties have not argued the conveyor belt is a trade fixture, and because the summary judgment evidence contains no evidence that Marazzi was a tenant at its Sunnyvale plant, we do not consider whether the conveyor belt was a trade fixture.

■■ An improvement, like a fixture, requires annexation to realty, and until something is annexed to realty, it cannot be considered an improvement. *Sonnier*, 909 S.W.2d at 479. In determining whether personalty has become attached to realty, the supreme court considers three factors: (1) the mode and sufficiency of annexation, ei-

ther real or constructive; (2) the adaptation of the personalty to the use or purpose of the realty; and (3) the intention of the owner. *Id.* (citing *Logan,* 686 S.W.2d at 607). Of these, the third factor of the owner's intent is preeminent, and the first two factors are considered evidence of that intent. *Id.*

■ The Reameses contend the first conveyor belt was not an improvement because it was not annexed to the realty and was easily moved. We focus on Marazzi's intent in determining if the conveyor was an improvement. The summary judgment evidence demonstrates Marazzi's intent that the first conveyor be an improvement to the realty. We note that in considering whether an item is attached to realty, the supreme court looks to the mode and sufficiency of the annexation, *either real or constructive. Id.* In this case, although the first conveyor was on wheels, and therefore not annexed to the realty physically, it was constructively annexed to the realty. The first conveyor was not bolted to the floor, or physically annexed to the realty, as the other two conveyors were only because if it had been bolted to the floor, workers could not clean the dryer located above the conveyor. The first conveyor was never moved for any purpose other than to reach the dryer and was never moved more than four or five feet. Furthermore, the conveyor was so adapted to the use of the realty, making tiles, that a critical phase of the process, transporting the dried powder from the dryer to the storage silo, could not be performed unless the first conveyor was in place. Under these circumstances, we conclude that although the first conveyor technically could be moved, it was constructively annexed to the realty because Marazzi never intended to move it more than a few feet as necessary for its operations and never moved it for any other purpose. The first conveyor was constructively annexed to the property as effectively as the other conveyor belts were, and it was specifically adapted to the purpose of the tile plant. These factors are all evidence of Marazzi's intent that the conveyor be an addition to the freehold, and we conclude the first conveyor was an improvement as a matter of law. Accordingly, we conclude the trial court did not err in determining that the first conveyor·was an improvement as a matter of law. We overrule the Reameses' first and second points of error.

## Did Hawthorne–Seving or Grubb Construct the Conveyor?

Although the first conveyor was an improvement, the Reameses contend the trial court, nevertheless, erred in granting summary judgment because neither Hawthorne–Seving nor Grubb is entitled to the protection of section 16.009 because they did not "construct" the conveyor. In their third point of error, the Reameses contend Hawthorne–Seving did not construct the conveyor as a matter of law. In their fourth point of error, they argue whether Hawthorne–Seving constructed the conveyor is a question of fact precluding summary judgment in favor of Hawthorne–Seving. Similarly, in their fifth point of error, they claim that whether Grubb constructed the conveyor is a question of fact precluding summary judgment in favor of Grubb. We address the activities of Hawthorne–Seving and Grubb separately.

■ Section 16.009 protects only those who "construct" or repair improvements to real property. *Sonnier,* 909 S.W.2d at 479. Because an item does not become an improvement until it is annexed to realty, a party who is not connected with annexing the item to real property has not "constructed" an improvement, even if the party manufactured the item. *Id.* at 480, 482. Therefore, when a manufacturer of an item has no relationship with annexing the item to real property, it has not constructed an improvement and is not protected under section 16.009. *Id.* at 481. Where there is no evidence that a party did anything more than manufacture an item to be annexed by others, that party is not protected under section 16.009. *Id.* at 481–82. Section 16.009 protects those who actually alter the realty by constructing additions or annexing personalty to it, not those who do no more than manufacture personalty that a third party later transforms into an improvement. *Id.* at 482. As a matter of law, one who was never an actor in the actual construction or installation of an improvement is not a constructor of an improvement

under section 16.009. *Petro Stopping Ctrs.,* 906 S.W.2d at 620. For example, the supreme court held that section 16.009 did not protect a manufacturer where there was no evidence that it did anything more than sell an item that another party later installed as an improvement. *Sonnier,* 909 S.W.2d at 483. Similarly, the Fort Worth Court of Appeals recently held a manufacturer did not construct an item as an improvement because the manufacturer was not involved in installing the item by merely selling it to a dealer who sold it to the real property owner who controlled and directed the item's installation. *Astec Indus., Inc. v. Suarez,* 921 S.W.2d 794, 796–97 (Tex.App.—Fort Worth 1996, no writ).

The Reameses contend that section 16.009 does not protect Hawthorne–Seving because it did not construct an improvement. Although they allege Hawthorne–Seving designed and manufactured the conveyor belt on which Reames was injured, they contend Hawthorne–Seving did not actually or physically install it at the Marazzi plant, and therefore, did not construct it as an improvement. Hawthorne–Seving, however, argues that although it did not "hammer the nails and turn the screws" to install the conveyor, it was nevertheless sufficiently involved in the installation to be considered a constructor.

■ The summary judgment evidence shows that Hawthorne–Seving contracted with Marazzi to install a raw materials weighing and batching system, as well as a spray dried powder storage and handling system, in Marazzi's plant. Pursuant to that contract, Hawthorne–Seving designed the conveyor belt system and arranged for its construction and installation by a subcontractor, paying the party who did the physical installation. Under these circumstances, Hawthorne–Seving had a relationship with the annexation of the conveyor belt system to the realty at Marazzi's plant. *See Sonnier,* 909 S.W.2d at 481; *Petro Stopping Ctrs.,* 906 S.W.2d at 620. Hawthorne–Seving's relationship to the installation was that of a general contractor. Such a general contractor is protected under section 16.009. *See Barnes v. J.W. Bateson Co.,* 755 S.W.2d 518,

519–20 (Tex.App.—Fort Worth 1988, no writ) (section 16.009 protected general contractor as well as subcontractor who physically installed improvement). As the general contractor, Hawthorne–Seving bore ultimate responsibility to Marazzi for the proper installation of the conveyor belt system. We conclude Hawthorne–Seving was involved in the actual installation of the conveyor belt system and, therefore, the trial court did not err in holding Hawthorne–Seving constructed the conveyor as an improvement. Accordingly, we overrule the Reameses' third and fourth points of error.

The Reameses contend in their fifth point of error that whether Grubb installed the conveyor is a disputed material fact issue that precludes summary judgment. In their second amended petition, the Reameses alleged that Grubb is liable for the injuries caused by the conveyor belt solely because Grubb installed the conveyor. At summary judgment and on appeal, they argue that the question of whether Grubb actually installed the conveyor precludes summary judgment in favor of Grubb. The Reameses argue that because Grubb presented no summary judgment evidence that it actually installed the conveyor, it cannot be protected as a matter of law under section 16.009 as one who constructed an improvement, and therefore, is not entitled to summary judgment.

■ In its motion for summary judgment, Grubb denied that it installed the conveyor and argued that it was entitled to summary judgment on that ground. It presented summary judgment evidence that, although it installed some equipment at the Marazzi plant, it had nothing to do with installing the conveyor on which Reames was injured. The only other summary judgment evidence regarding Grubb and the conveyor's installation was evidence that Hawthorne–Seving paid Tri–State and Grubb for installing equipment at Marazzi's plant. In the alternative, Grubb argued that if it had installed the conveyor, section 16.009 would protect it from suit. Because the Reameses' theory of liability against Grubb is predicated on Grubb having actually installed the conveyor, Grubb was entitled to summary judgment either because it did not install the

conveyor or because section 16.009 would bar suit against Grubb if it had actually installed the conveyor.

The Reameses' argument presumes we can affirm the summary judgment in favor of Grubb only under the theory that section 16.009 protects it from suit as someone who installed or constructed an improvement. We note, however, that the trial court did not specify the grounds on which it awarded Grubb summary judgment. Therefore, we affirm the judgment if either of Grubb's grounds support summary judgment and are not limited to affirming the judgment based solely on the application of section 16.009. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). Furthermore, because Grubb was entitled to summary judgment whether it had actually installed the conveyor or not, the issue of whether Grubb had installed the conveyor was not material to determining Grubb's liability. Accordingly, we conclude the trial court did not err in awarding Grubb summary judgment, and we overrule the Reameses' fifth point of error.

### Does Section 16.009 Violate the Texas Constitution?

In their sixth point of error, the Reameses argue the trial court erred in granting summary judgment because section 16.009 violates the Texas Constitution's open courts provision. *See* Tex. Const. art. I, § 13. The courts of appeals have consistently upheld the constitutionality of section 16.009 against the type of challenge the Reameses make. *See, e.g., Rodarte*, 786 S.W.2d at 96, *overruled on other grounds by Petro Stopping Ctrs.*, 906 S.W.2d at 620; *Barnes*, 755 S.W.2d at 522; *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 925 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). We overrule the Reameses' sixth point of error.

### CONCLUSION

We conclude, as a matter of law within the context of section 16.009, that the conveyor on which Reames was injured was an improvement and that Hawthorne–Seving constructed it. Because the Reameses filed suit more than ten years after the conveyor's installation, section 16.009 bars their suit

against Hawthorne–Seving. The Reameses' action against Grubb also fails because Grubb either did not install the conveyor or is protected from suit as an installer or constructor of an improvement under section 16.009. We affirm the trial court's judgment.