# Supreme Court of Texas

No. 23-0848

Third Coast Services, LLC and
SpawGlass Civil Construction, Inc.,

*Petitioners,*

v.

Felicitas Castaneda, Individually and as Representative of
the Estate of Pedro Castaneda, Deceased, Irving Castaneda,
Evelyn Castaneda, and Lizzie Castaneda,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

**Argued September 9, 2025**

JUSTICE HUDDLE delivered the opinion of the Court.

Justice Lehrmann did not participate in the decision.

Civil Practice and Remedies Code Section 97.002 extinguishes liability of contractors who construct or repair a highway, road, or street for the Texas Department of Transportation and meet certain other requirements. The contractors here seek the statute's protection, but the court of appeals held that Section 97.002 does not apply because

neither contracted directly with TxDOT. We hold that the court of appeals erred by engrafting a contractual-privity requirement onto the statute's text. We also hold that the contractors conclusively established that they worked "for" TxDOT as Section 97.002 requires and that the work they performed qualifies as construction or repair of "a highway, road, or street." We therefore reverse the court of appeals' judgment and remand the case to that court for it to determine whether the contractors conclusively established the remaining elements of Section 97.002.

## I. Background

The decedent, Pedro Castaneda, was driving across State Highway 249 on Woodtrace Boulevard when two vehicles collided with his truck. The intersection and area surrounding it were under construction at the time, and, while traffic lights had been installed, they were not yet operational. The parties dispute whether, at the time of the accident, the traffic lights were covered with black fabric to indicate that they were not working. But according to the police report, Castaneda failed to yield the right of way at the stop sign that controlled the intersection while the traffic lights were not operational.

Castaneda's family sued, and the contractor defendants raised the Section 97.002 defense. Because determining whether Section 97.002 applies requires understanding the nature of the construction project and the relationships among those involved, we provide a brief overview.

After the Texas Transportation Commission designated a portion of SH 249 as a future toll facility, the Texas Department of Transportation and Montgomery County, through the Montgomery

2

County Toll Road Authority, entered into a written agreement governing the toll road project.[1] Their Construction, Operation and Maintenance Agreement divides the overall project in two. It gives the County the right to use a portion of the State's right-of-way over SH 249 to design and construct the "County Project," which is the southern portion of the new toll road beginning at the Montgomery/Harris County border. The "TxDOT Project," by contrast, covers the portion of the project extending into Grimes County, which TxDOT would develop. The Agreement declares that the County will "design, construct, maintain, and operate the County Project," although the County and its contractors must "cooperate and coordinate" with TxDOT and TxDOT must review and approve the County's plans:

> The County will finance, acquire right-of-way, design, construct, maintain, and operate the County Project. . . . The State and County agree to take all reasonable actions and to cooperate and coordinate with each other and to cause their contractors to cooperate and coordinate with each other to ensure the timely construction and completion of the County Project.
>
> . . . [D]evelopment of plans for the County Project will be the responsibility of the County, but shall be coordinated with TxDOT at all stages and shall be submitted to TxDOT for review and approval . . . . Significant field changes shall likewise be submitted to TxDOT prior to being accomplished. . . . Specifications for such plans and any field changes to the County Project and the frontage roads shall be in accordance with the latest standards required by TxDOT.

---

[1] The Transportation Code authorizes TxDOT to enter into a toll project agreement with a "local toll project entity," which may include a county or a regional tollway authority. TEX. TRANSP. CODE §§ 373.001(1), .006(a).

The Agreement provides that "the County shall have all responsibility to the public for the design, maintenance, signing, and lighting on the County Project." It also declares that, so long as tolls are collected, the County Project "will not be designated as part of the State Highway System and shall be considered as part of the County toll road system." But the Agreement treats frontage roads differently: it states that *TxDOT* shall be responsible for "the operation and maintenance of the frontage roads that are adjacent to the County Project."

To summarize, the County was responsible for designing, constructing, maintaining, and operating the County Project, but it was required to coordinate with TxDOT, comply with TxDOT's standards, and allow TxDOT to review and approve the project's plans. Following construction, the County Project would become part of the County's toll road system and would not be part of the State's highway system. But responsibility for operation and maintenance of the frontage roads adjacent to the County Project would reside with TxDOT.

The Agreement between TxDOT and the County contemplates that the County would award and fund contracts with third parties to carry out the design and construction work. So the County contracted with SpawGlass Civil Construction, Inc. to serve as the County Project's general contractor. SpawGlass, in turn, contracted with subcontractors focused on distinct aspects of the County Project. One such subcontractor was Third Coast Services, LLC. Third Coast's scope of work, reflected in its written contract with SpawGlass, was to furnish and install "electrical components," including traffic signals.

4

SpawGlass and Third Coast raised the Section 97.002 defense via motions for summary judgment. Section 97.002 states:

> A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation is not liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair if, at the time of the personal injury, property damage, or death, the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death.

TEX. CIV. PRAC. & REM. CODE § 97.002.

The trial court denied summary judgment, and the contractors filed an interlocutory appeal. *See id.* § 51.014(a)(17) ("A person may appeal from an interlocutory order . . . that . . . grants or denies a motion for summary judgment filed by a contractor based on Section 97.002 . . . .").

The court of appeals affirmed. It held that the contractors failed to establish an essential element of Section 97.002—that they are contractors who constructed or repaired a highway, road, or street "for" TxDOT. 679 S.W.3d 254, 262–63 (Tex. App.—Houston [14th Dist.] 2023). The court concluded that the statute "applies only to contractors hired by TxDOT"—in other words, "the Legislature intended for there to be a contractual relationship between the contractor and TxDOT." *Id.* at 262. The court rejected *Mahoney v. Webber*'s conclusion that privity with TxDOT is unnecessary as long as the contractor "perform[s] work under a contract that makes the [contractor] responsible for constructing or repairing a highway, road, or street for TxDOT." *Id.* at 260–61 (quoting *Mahoney v. Webber, LLC*, 608 S.W.3d 444, 448 (Tex.

5

App.—Houston [1st Dist.] 2020, no pet.)). It reasoned that *Mahoney* "impermissibly 'rewrites' the statute and expands for whom the contractor must perform work in order for the statute to apply." *Id.* at 261. Because the contractors did not conclusively establish that they were "hired by TxDOT," the court held they could not invoke Section 97.002. *Id.* at 263.

The court of appeals did not address Castaneda's alternative argument that neither general-contractor work nor traffic-signal installation constitutes construction or repair of "a highway, road, or street." *Id.* Nor did it address whether the contractors conclusively established the other elements of Section 97.002. SpawGlass and Third Coast petitioned this Court for review, which we granted.

## II. Discussion

Civil Practice and Remedies Code Section 97.002 precludes a contractor's liability "to a claimant for personal injury, property damage, or death" under specified circumstances. TEX. CIV. PRAC. & REM. CODE § 97.002. To avail himself of the statute's protection, the contractor must "construct[] or repair[] a highway, road, or street for [TxDOT]," and the plaintiff's claim against him must "aris[e] from the performance of the construction or repair." *Id.* The contractor must also demonstrate he was "in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death." *Id.*

Section 97.002 is an affirmative defense—it does not rebut or deny the factual propositions in the plaintiff's pleading but instead establishes a basis for avoiding the plaintiff's claim. *See Regency Field*

6

*Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 819 (Tex. 2021) ("[A]n affirmative defense is one of avoidance, rather than a defense in denial." (alteration in original) (quoting *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991))). Thus, to obtain summary judgment under Section 97.002, the contractors must conclusively establish each of the statute's requirements. *See First Sabrepoint Cap. Mgmt., L.P. v. Farmland Partners Inc.*, 712 S.W.3d 75, 84 (Tex. 2025) ("To establish entitlement to summary judgment based on an affirmative defense . . . the defendant must conclusively establish each element of its affirmative defense.").

Statutory interpretation is a question of law that we review de novo. *Tex. Health & Hum. Servs. Comm'n v. Est. of Burt*, 689 S.W.3d 274, 279 (Tex. 2024). As with any statute, our interpretation begins with the statute's text. *Hampton v. Thome*, 687 S.W.3d 496, 501 (Tex. 2024). We "presume the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *Rogers v. Bagley*, 623 S.W.3d 343, 352 (Tex. 2021) (citation modified) (quoting *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325–26 (Tex. 2017)).

In affirming the trial court's denial of the contractors' motions for summary judgment, the court of appeals concluded that Section 97.002 benefits only contractors hired by and in privity with TxDOT. 679 S.W.3d at 262. Because the contractors here were hired by and contracted with entities other than TxDOT (the County and SpawGlass, respectively), the court concluded they did not perform work "for"

7

TxDOT and therefore cannot avail themselves of Section 97.002. *Id.* at 262–63.

We begin by noting that Section 97.002's text nowhere limits its application to contractors who contract with and are hired by TxDOT directly. Instead, the statute's scope extends to a contractor that "constructs or repairs a highway, road, or street for" TxDOT. TEX. CIV. PRAC. & REM. CODE § 97.002. The Legislature expressly requires contractual privity when it intends to cabin a statute's scope accordingly. For example, Transportation Code Section 474.003's limitation on contractor liability applies only to "[a] contractor who enters into a contract with a governmental entity." TEX. TRANSP. CODE § 474.003(a). Likewise, Transportation Code Section 472.021 permits a "contractor" to remove highway construction barricades without punishment if he is "under contract with this state or a political subdivision of this state." *Id.* § 472.021(b)(2), (d)(1). But Section 97.002 contains no analogous mention of contractual privity. We must presume this omission was deliberate. *Rogers*, 623 S.W.3d at 352; *see also Hogan v. Zoanni*, 627 S.W.3d 163, 170 (Tex. 2021) (plurality op.) ("[W]hen a statute is silent on a subject, we presume the Legislature purposefully excluded that language."). Accordingly, we agree with the *Mahoney* court's conclusion that Section 97.002's application does not require privity with TxDOT. 608 S.W.3d at 447–48. The court of appeals erred by reading such a requirement into the statute.

Returning to Section 97.002's text, we must determine when, absent such privity, a contractor's work in "construct[ing] or repair[ing] a highway, road, or street" is "for" TxDOT. When the statute does not

8

define a term, we apply its ordinary, common meaning unless a contrary meaning is apparent from the text, typically by looking to dictionary definitions. *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34–35 (Tex. 2017).

"For" can have many meanings depending on context. Dictionaries from around the statute's enactment reflect the ordinary meaning of "for" as used in Section 97.002 encompasses the idea that the result of an identified activity (constructing or repairing a highway, road, or street) will be received, owned, or used by the person the activity is "for" (TxDOT). *See, e.g.*, *For*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) ("used as a function word to indicate the person or thing that something is to be delivered to . . . or assigned to . . . or used by or in connection with"); *For*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1996) ("a function word to indicate the object or recipient of a perception, desire, or activity"); *For*, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1987) ("intended to belong to, or be used in connection with"). In determining whether Section 97.002 applies, then, courts must consider whether TxDOT will be a recipient, owner, or user of the contractor's work.

In light of the ordinary meaning of "for," one who contracts directly with TxDOT to construct or repair a state-owned highway, road, or street will, as a general rule, perform that work "for" TxDOT. The same will generally be true of subcontractors hired to perform part of the work. But here, Castaneda argues that TxDOT relinquished control over the County Project, so any work performed on the County Project must be *only* for the County and not for TxDOT. Castaneda points to

9

provisions of the Agreement to support his contention that TxDOT ceded control over the County Project to the County:

- The County bears responsibility to "finance, acquire right-of-way, design, construct, maintain, and operate the County Project."

- "[D]evelopment of plans for the County Project will be the responsibility of the County . . . ."

- The County "shall have all responsibility to the public for the design, maintenance, signing, and lighting on the County Project."

- The County Project "will not be designated as part of the State Highway System and shall be considered as part of the County toll road system."

While the contractors were unquestionably doing construction work for the County, nothing in Section 97.002's text or the plain meaning of "for" suggests that work may be "for" only the entity who exercises control over the work while it is ongoing to the exclusion of all others. The fact that the contractors' work may have been "for" the County does not preclude their work from also being "for" TxDOT.

At the same time, the contractors' proposed construction strikes us as too broad. They contend that because the County Project must meet TxDOT specifications and TxDOT has the right to inspect and approve the plans, any work performed is necessarily work performed "for" TxDOT. But the argument proves too much. Indeed, under this reading, almost any work performed on a public road or highway could be considered work performed for TxDOT. A requirement that the County must "coordinate" with TxDOT and submit its plans for TxDOT's "review and approval" is, alone, insufficient. The Legislature could have drafted Section 97.002 that broadly, to preclude liability of any

10

contractor who constructs or repairs any road over which TxDOT may exercise a degree of supervisory regulatory authority, yet it did not.

For today's purposes, we need not define for all cases the precise line at which construction work on a project for which TxDOT has ceded a highway, road, or street to another entity qualifies as construction work "for" TxDOT within the meaning of Section 97.002. It is sufficient to conclude that the work of the two contractors in this case qualifies because the County and TxDOT agreed that TxDOT ultimately would bear responsibility for the operation and maintenance of the project's frontage roads. In other words, the area on which SpawGlass contracted to perform construction work included the existing lanes of SH 249, a highway that was owned by the State and designated to become the frontage roads over which TxDOT would ultimately assume responsibility and control. Third Coast's subcontract likewise required it to perform lighting and signal work on what would become the frontage roads over which TxDOT would ultimately exercise responsibility and control. Even Castaneda presented summary judgment evidence acknowledging that the traffic signals would be "controlled by TxDOT after the project was complete." Because SpawGlass and Third Coast contracted to perform work on the frontage roads, and TxDOT would exercise responsibility for their operation and maintenance after the project's completion, the contractors' work was both "for" the County and "for" TxDOT. *See Mahoney*, 608 S.W.3d at 447–48 (applying Section 97.002 to a contractor's agreement with a county because the agreement required the contractor to construct part of a state highway). The court of appeals erred by concluding that the

11

contractors did not perform work "for" TxDOT within the meaning of Section 97.002.

Castaneda advances other grounds for affirming, which the court of appeals did not address given its holding. First, Castaneda contends that the contractors cannot avail themselves of Section 97.002 because his accident did not "aris[e] from the performance of the construction or repair" of "a highway, road, or street" but rather from the negligent installation of traffic signals, which are not a "highway, road, or street." TEX. CIV. PRAC. & REM. CODE § 97.002.

Section 97.002 does not define "highway," but the parties agree that the controlling definition is found in the Transportation Code: "'Highway' includes a tolled or nontolled public road or part of a tolled or nontolled public road and a bridge, culvert, building, or *other necessary structure related to a public road.*" TEX. TRANSP. CODE § 221.001(1) (emphasis added). This Court has held that "'other necessary structure related to a public road' is something that likewise pertains to the physical function of the road, such as a guard rail." *State v. Fid. & Deposit Co. of Md.*, 223 S.W.3d 309, 312 (Tex. 2007). The traffic signals installed along what was to become the frontage roads of the tollway project fall into this category. Like guard rails, traffic signals pertain to the physical function of the road and reduce the risks associated with highway travel. We conclude that the contractors' work on the traffic signals for what would become the frontage roads to this

12

tollway project constitutes the construction or repair of a highway for TxDOT.[2]

Castaneda's second alternative argument for affirmance, unlike the first, does not present a clean legal issue. The parties dispute whether the contractors conclusively established their "compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death." TEX. CIV. PRAC. & REM. CODE § 97.002.

The contractors urge us to review the evidence regarding their contractual compliance in the first instance and render judgment in their favor. Both rely on testimony from the County's project engineer and their own employees to the effect that they were in compliance with the County's traffic control plan. In response, Castaneda asserts the contractors fell short of compliance in multiple ways:

- Both failed to "[w]rap signal heads with dark plastic or suitable material to conceal the signal faces from the time of installation until placing into operation."

---

[2] In a single paragraph, Castaneda also contends that SpawGlass did not "construct" anything because it "did not 'build,' 'combine' or 'arrange' anything in the [i]ntersection; that was Third Coast's job." We reject this narrow reading of "construct." A general contractor who bears ultimate responsibility to the owner for a construction project "constructs" the project even though the general contractor may not actually perform the physical work. *See Reames v. Hawthorne-Seving, Inc.*, 949 S.W.2d 758, 763 (Tex. App.—Dallas 1997, pet. denied) (holding that a statute of repose protecting those who "construct" improvements applied to a general contractor who "bore ultimate responsibility" to the owner even though a subcontractor physically "hammer[ed] the nails and turn[ed] the screws"); *S. Tex. Coll. of Law v. KBR, Inc.*, 433 S.W.3d 86, 91–92 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (applying *Reames*).

13

- Despite several warnings about the dangerous traffic conditions at the intersection where this accident occurred, SpawGlass failed to "modify temporary traffic controls," "[s]ubmit changes to the traffic control plan," or "[f]urnish and maintain the barricades and warning signs" that would have alerted drivers to the intersection's dangerous condition.

- Third Coast delayed in activating the signal lights after they were installed in violation of its obligation to complete its activities "as work progresses."

This is the type of fact-intensive question we typically do not resolve without the benefit of the court of appeals' reasoning. Accordingly, consistent with our typical practice, we remand this issue to the court of appeals. *See, e.g.*, *Apache Corp. v. Apollo Expl., LLC*, 670 S.W.3d 319, 340 (Tex. 2023) (remanding case to the court of appeals to consider whether there was evidence other than what the court of appeals improperly relied on to support reversal of a no-evidence summary judgment); *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 439 (Tex. 2016) (remanding case to the court of appeals to address alternative summary judgment grounds in the first instance).

### III. Conclusion

The court of appeals erred by holding Section 97.002 applies only if a contractor is hired by TxDOT and a party to a TxDOT contract governing the construction project at issue. Though neither SpawGlass nor Third Coast was a party to the TxDOT contract, the summary judgment record conclusively established that (1) Castaneda's claim arose from the construction or repair of a highway and (2) SpawGlass and Third Coast performed their work "for" TxDOT within the meaning of Section 97.002. We reverse the court of appeals' judgment and remand the case to that court to consider whether SpawGlass and Third

14

Coast conclusively established the remaining elements of Section 97.002.

                                                       _____

                                                       Rebeca A. Huddle
Justice

**OPINION DELIVERED:** December 12, 2025