**Opinion issued July 2, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-09-01140-CV

———————————

**JASON JENKINS, Appellant**

**V.**

**OCCIDENTAL CHEMICAL CORPORATION, Appellee**

On Appeal from the 295th District Court
Harris County, Texas
Trial Court Case No. 2007-73468

## OPINION ON FURTHER REHEARING

Jason Jenkins brought this action against Occidental Chemical Corporation after an acid addition machine designed by Occidental sprayed acid in Jenkins's face, rendering him partially blind. The jury found for Jenkins on liability and damages, but the trial court entered judgment in Occidental's favor based on two

statutes of repose.[1] In two issues, Jenkins argues that the trial court erred in entering judgment in favor of Occidental on the basis of the statutes of repose. In three cross-points, Occidental argues we may affirm the trial court's judgment on alternative grounds because Jenkins cannot prevail on the cause of action for which the jury found in his favor and because the statute of limitations bars Jenkins's claims. We hold that neither statute of repose applies, reject Occidental's alternative grounds for affirming the trial court's judgment, and remand the case for entry of judgment on the jury's liability and damages findings.[2]

## Background

Occidental owned a chemical plant in Bayport. In 1992, Occidental installed an acid addition system to regulate the acidity of a chemical compound it produced. Occidental employee Neil Ackerman developed the conceptual design for the system, shepherded the design process from start to finish, and was responsible for "getting it done." He worked in collaboration with a team of Occidental employees and under the supervision of team leader Kathryn Hanneman. While Hanneman and other members of the design team were licensed

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.008, 16.009 (West 2002).

[2]    Occidental has filed a motion for en banc reconsideration of our February 14, 2013 opinion on rehearing. We vacate and withdraw our February 14 opinion and judgment, and we substitute this opinion and judgment in their place. We dismiss Occidental's motion for en banc reconsideration as moot. *See Brookshire Brothers, Inc. v. Smith*, 176 S.W.3d 30, 33 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (op. on reh'g).

2

engineers, Ackerman, who had an engineering degree, was not. Occidental hired a third-party engineering firm to create the detailed design drawings for the acid addition system. It also ordered some of the materials for the acid addition system and hired an independent contractor to fabricate and install the acid addition system at the plant.

Six years later, Occidental sold the plant with the acid addition system in place. Eight years thereafter, Jenkins, an operator at the plant, was partially blinded when the acid addition system sprayed acetic acid at him. Jenkins sued Occidental for negligence in designing the acid addition system.[3] Occidental pleaded, as affirmative defenses, that Jenkins's claim was barred by two statutes of repose—one governing claims against registered or licensed professionals who design improvements to real property and the other governing claims against those who construct such improvements. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.008, 16.009 (West 2002).

After a two-week trial, the jury found in favor of Jenkins on his negligence claim, attributed seventy-five percent of the liability to Occidental, and awarded

---

[3]    Jenkins brought claims against other defendants as well, but Occidental was the only remaining defendant at the time of trial. Jenkins also asserted breach of warranty and strict liability claims against Occidental, but the trial court granted a directed verdict on those claims.

damages.[4] In response to the jury questions submitted by Occidental regarding its statute of repose defenses, the jury made the following findings about the acid addition system: (1) it was an improvement; (2) it was not designed by a licensed or registered engineer; and (3) it was designed under the supervision of a licensed or registered engineer. The trial court rendered a take-nothing verdict on the basis of Occidental's statute of repose defenses.

**Standard of Review**

In this appeal, we must interpret the statutes of repose set forth in sections 16.008 and 16.009 of the Civil Practice and Remedies Code. The meaning of a statute is a question of law, which we review de novo. *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). In construing sections 16.008 and 16.009, our primary goal is to ascertain and give effect to the legislature's intent as expressed by the words of the statute. *MCI Sales*, 329 S.W.3d at 500; *Entergy Gulf States*, 282 S.W.3d at 437. We give the words of the statute their plain and common meaning unless the statute defines the words otherwise, a different meaning is apparent from the context, or using the common meaning would lead to absurd results. *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d

---

[4] The jury assigned five percent of the liability to Jenkins and twenty percent to Equistar, the owner of the plant at the time of the injury, whom Occidental designated as a responsible third-party.

619, 633 (Tex. 2008). When the words of the statute are clear, they are determinative. *Entergy Gulf States*, 282 S.W.3d at 437.

In moving for judgment notwithstanding the verdict, Occidental relied on several jury findings to support its statute of repose defenses but challenged the jury's finding that the acid addition system was not designed by an Occidental employee who was a licensed or registered engineer. Occidental asserted that it conclusively proved the opposite. It further asserted that it conclusively proved alternative elements of its statute of repose defense on which it failed to request a jury finding: that the system was planned by an Occidental employee licensed in engineering and that it was inspected by an Occidental employee licensed in engineering. A statute of repose provides an affirmative defense, and Occidental bore the burden of proving all factual requisites to the application of the statutes of repose. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) (holding that defendant bore burden of establishing right to summary judgment on basis of statute of repose defense); *Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 416 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (observing that statute of repose operates as affirmative defense on which defendant bears burden of proof); *see also* TEX. R. CIV. P. 94. Unless Occidental conclusively established each element of its affirmative defense, its failure to obtain a jury finding in its

5

favor is fatal.[5] *See Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 805–06 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (holding that, unless an affirmative defense is established as matter of law, defendant bears burden of obtaining jury findings necessary to support defense); *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 207 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (stating that, when affirmative defense was not submitted to jury, court reviews record to determine whether issue was disputed or whether defense was conclusively established by evidence).

### Occidental's Statute of Repose Defenses

The trial court interpreted the jury's findings that the acid addition system was an improvement and was designed under the supervision of an engineer as establishing Occidental's right to a take-nothing judgment on the basis of its statute of repose defenses. The trial court did not specify which statute of repose—section 16.008 or section 16.009—it relied on in reaching that conclusion. In two issues, Jenkins argues that Occidental has not established a right to rely on either statute.

**A.    Introduction to sections 16.008 and 16.009 of the CPRC**

Sections 16.008 and 16.009 of the Civil Practice and Remedies Code are ten-year statutes of repose. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.008, 16.009. Section 16.008 provides that a suit "against a registered or licensed

---

[5]    Occidental has not argued that it is entitled to any deemed jury findings.

6

architect, engineer, interior designer, or landscape architect . . . who designs, plans, or inspects the construction of an improvement to real property or equipment attached to real property" may not be brought more than ten years after substantial completion of the improvement or the beginning of operation of the equipment. TEX. CIV. PRAC. & REM. CODE ANN. § 16.008(a). Section 16.009 provides that a suit "against a person who constructs or repairs an improvement to real property" may not be brought more than ten years after substantial completion of the improvement. TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(a).

Thus, sections 16.008 and 16.009 "differ in who they protect and the object of the work protected." *Sonnier v. Chisholm-Ryder Co., Inc.*, 909 S.W.2d 475, 479 (Tex. 1995). Section 16.009 relates only to improvements to real property but protects a broader class of persons: those who construct or repair such an improvement. TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(a); *see also Sonnier*, 909 S.W.2d at 479. Section 16.008 protects only registered or licensed design professionals, but applies to a broader category of work: improvements to real property and equipment attached to real property. TEX. CIV. PRAC. & REM. CODE ANN. § 16.008(a); *see also Sonnier*, 909 S.W.2d at 479.

**B.      Section 16.008 does not bar Jenkins's claim against Occidental**

In his first issue, Jenkins argues that the trial court erred in rendering judgment for Occidental under section 16.008 because (1) Occidental is not a

registered engineering firm, (2) Occidental failed to prove conclusively that the acid addition system was designed by a registered or licensed engineer, and (3) the jury's finding that the design was supervised by a registered or licensed engineer is immaterial. Occidental does not contend that it is a registered engineering firm or that Ackerman was a registered or licensed engineer. Instead, it contends that the jury finding that the acid addition system was designed under the supervision of a licensed engineer is sufficient to establish application of the statute. Alternatively, it contends that the evidence conclusively established that the acid addition system was designed, inspected, and planned by Hanneman rather than Ackerman or any third-party. We conclude that supervision of the design by a licensed engineer does not invoke the statute, by the statute's plain language and in light of distinctive language in its sister statute. We also conclude that Occidental did not conclusively prove that Hanneman designed, inspected, and planned the acid addition system.

1.  **Supervision by a licensed engineer does not, alone, implicate the protections of section 16.008**

By its clear and unambiguous language, section 16.008 limits its scope to claims "against a registered or licensed . . . engineer . . . who designs, plans, or inspects" the construction of an improvement to real property. TEX. CIV. PRAC. & REM. CODE ANN. § 16.008(a). The jury found that the acid addition system was an improvement to real property. Section 16.008 thus applies to any design, planning, or inspection of the acid addition system by a registered or licensed engineer. But

8

the jury found that the system was not designed by a registered or licensed engineer, and Occidental chose not to submit to the jury whether the system was planned or inspected by a registered or licensed engineer. Instead, Occidental asked the jury to find that the acid addition system was designed under the supervision of a registered or licensed engineer. This finding is not material to the application of section 16.008, which makes no reference to one who supervises the design of an improvement.[6] *See id.*

Although our holding is dictated by the plain language of the statute, examining section 16.008 in the context of its sister statute buttresses our conclusion. *See* TEX. GOV'T CODE ANN. § 311.023 (West 2005). Sections 16.008 and 16.009 were enacted for a similar purpose but have different parameters. *See Sonnier*, 909 S.W.2d at 479. The legislature chose to limit the class of persons protected by section 16.009 only with respect to the nature of their work: it applies to any person who "constructs or repairs an improvement to real property." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(a). By comparison, the legislature chose to limit the class of persons protected by section 16.008 not only with respect to the nature of their work but also with respect to the nature of the

---

[6]    It is undisputed that Occidental is not a registered or licensed engineering firm. Therefore, it cannot argue that the entity itself was a "registered or licensed . . . engineer . . . who design[ed]" the acid addition system. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.008(a).

9

persons: it expressly applies only to "registered or licensed" design professionals. *Id.* § 16.008(a). The legislature could have offered this protection to unlicensed persons performing the same work, but it chose not to do so.

Occidental relies on *Texas Gas Exploration Corp. v. Fluor Corp.*, 828 S.W.2d 28 (Tex. App.—Texarkana 1991, writ denied), and *Sowders v. M.W. Kellogg Co.*, 663 S.W.2d 644, 646 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.), to support its contention that section 16.008 applies when an improvement is designed under the supervision of, but not by, a registered or licensed engineer. While both opinions contain factual discussions regarding supervisory work by a licensed engineer, the holdings in these cases do not support Occidental's position.

The issue in *Texas Gas* was not whether the claims against the defendant, Fluor, fell within the scope of sections 16.008 and 16.009; rather, the issue was whether the statutes applied retroactively and whether Fluor was estopped from relying on them. 828 S.W.2d at 30. Occidental relies on a statement in the opinion that the "design and construction [of an expansion to a gas processing plant] were both performed under the supervision of a Texas-registered professional engineer." But nothing in the opinion indicates that the expansion was not designed by a licensed engineer—a question that was not at issue. *See id.* at 30–31.

*Sowders* also did not address the issue presented here. In *Sowders*, the plaintiffs contended that the statute of repose for architects and engineers did not apply to their claims against M.W. Kellogg because it was a manufacturer, not a designer, of the propane unit in question. 663 S.W.2d at 646. The court held that the record did not support Sowders's contention that M.W. Kellogg was merely a manufacturer, reciting affidavit testimony that M.W. Kellogg was hired to construct and install the propane unit and that "the aforementioned engineering services were performed by or under the responsible charge of the engineers authorized to practice professional engineering in New York State." *Id.* at 649. As in *Texas Gas*, the court's reference to "supervision" relates to the construction as well as the design of the unit at issue. It does not suggest that the unit was not designed by registered or licensed engineers. *See id.*; *Tex. Gas Exploration*, 828 S.W.2d at 30–31.

We conclude that the jury's finding that a registered or licensed engineer supervised the design of the acid addition system does not establish Occidental's right to the protections of section 16.008.

**2.  Occidental did not conclusively establish that Hanneman designed, planned, and inspected the acid addition system**

Occidental asserts that it conclusively proved that Hanneman, a licensed engineer and the head of Occidental's design team for the project, designed the acid addition system. The jury disagreed, and there is evidence in the record that

11

supports the jury's finding. The evidence at trial was that Neil Ackerman, who was not a registered or licensed engineer, created the conceptual design for the acid addition system. No one employed by Occidental prepared the detailed plans; Occidental contracted out the design drafting to a third-party engineering firm, HMW Design. Hanneman testified that the conceptual design originated from Ackerman. She also testified that the plant modification document for the acid addition system came from Ackerman. That document identifies Ackerman as the "originator" and includes instructions "per Neil Ackerman." According to Hanneman, the task of the originator is to "start the process." Hanneman also testified that Ackerman was in charge of shepherding the design process from start to finish. Ackerman testified that he coordinated everyone working on the project and was responsible for presenting the final design. This is some evidence from which the jury could reasonably have concluded that the acid addition system was designed by Ackerman, who was not a registered or licensed engineer, rather than by Hanneman.

Occidental points out that Hanneman initialed the final document, but this alone does not conclusively establish that Hanneman designed the acid addition system. Hanneman also testified that she was the one who decided to replace the old system for modifying the acid and Ph-balance, that the design process was collaborative, and that Ackerman "did not do this all by himself." Occidental

contends that this evidence is conclusive, and therefore may not be disregarded by the jury, because "evidence of Neil Ackerman's role in the design process" does not constitute "evidence that Hanneman did not participate in the design process." We agree that the jury may not disregard relevant, undisputed evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810–11 (Tex. 2005).

We disagree that Hanneman's testimony was undisputed in the relevant respect. Occidental's argument misses the point for two reasons. First, section 16.008 does not extend protection to all who participated in the design process; it protects those "registered or licensed . . . engineer[s]" who "design[], plan[], or inspect[]" improvements to real property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.008(a). There is *some* evidence that Ackerman personally designed, planned, and inspected the acid addition machine—not that he merely participated in a group that jointly performed these tasks—while his co-workers played other roles in the process such as task management and oversight. Second, Occidental incorrectly implies that if any licensed engineer participated in a design project in any way, then section 16.008 bars liability against unlicensed engineers for their work. Nothing in section 16.008 supports application of the statute to design work performed by unlicensed engineers; to the contrary, the statute expressly applies only to "a registered or licensed . . . engineer." *See id.* Section 16.008 does not bar

suit against Occidental for design work performed by an unlicensed engineer like Ackerman, which is the basis for the jury's liability finding here.

Occidental alternatively asserts that it conclusively proved that Hanneman planned and inspected the acid addition system. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.008(a) (statute applies to claims "against a registered or licensed . . . engineer . . . who designs, plans, or inspects" the construction of an improvement to real property). Occidental did not submit a jury question on this issue. Jenkins points out that Occidental's liability arises out of the design of the acid addition system, not the planning or inspection of the system. Assuming without deciding that Occidental could invoke section 16.008 on the basis of Hanneman's planning or inspection of the acid addition system, we conclude that Occidental did not conclusively prove that Hanneman planned and inspected the system.

Occidental relies on evidence regarding Hanneman's role in forming the design team and as head of that team. Hanneman also reviewed and commented on some of the design drawings. While this evidence demonstrates that Hanneman had some involvement in the design process, it does not conclusively establish that she personally planned and inspected the construction of the acid addition system. The jury could have reasonably concluded that Hanneman's role was supervisory in nature and that Ackerman performed the actual planning and inspection of the construction.

14

The jury also could have reasonably concluded that the planning and inspection of the construction of the acid addition system was performed by an employee of HMW Design, the third-party contractor Occidental hired to do the design drafting. For example, the design drawings reflect that they are "by" HMW employee Chet Wood, and those that are stamped "APPROVED FOR CONSTRUCTION" bear his initials on the approval signature line.[7] Hanneman testified that HMW put together the drawings and material regarding "how [the acid addition system] was to actually be constructed."

The jury likewise could have reasonably concluded that Hanneman planned and inspected the construction of the acid addition system. But Occidental neglected to obtain a jury finding on this issue. Occidental therefore failed to establish its statute of repose defense on this basis. *See Texaco*, 729 S.W.2d at 805–06; *Whitney Nat'l Bank*, 122 S.W.3d at 207.

We sustain Jenkins's first issue.

## C. Section 16.009 does not bar Jenkins's claim against Occidental

Jenkins argues in his second issue that the trial court erred in rendering judgment for Occidental under section 16.009 because (a) the jury's liability

---

[7]  At trial, one of the reasons espoused by the court for including in its charge a jury question on the design of the acid addition system that was specific to a registered or licensed engineer "employed by Occidental" was the possibility that the jury might conclude that the system was designed by an HMW employee.

15

finding is based on negligent design rather than negligent construction, (b) Occidental admitted it did not "construct" the acid addition system, and (c) Occidental is not entitled to "respondeat repose" for the acts of third-party contractors. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(a). Occidental contends that it "construct[ed]" the acid addition system, within the meaning of the statute, by hiring and supervising a third-party contractor that constructed the system.

By its plain language, Section 16.009 applies only to claims brought against "a person who constructs or repairs an improvement to real property" in an action "arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement."[8] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(a). Thus, a defendant seeking repose under Section 16.009 must prove three requisites to the statute's application:

    (1)    "the defendant must be the one who *constructs or repairs*";

    (2)    "that which the defendant constructs or repairs must be an *improvement to real property*"; and

    (3)    the action must "aris[e] out of a defective or unsafe condition of real property or a deficiency in the construction or repair of the improvement."

---

[8]    The Code Construction Act defines "person" as including a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." TEX. GOV'T CODE ANN. § 311.005(2) (West 2005).

16

*Williams v. U.S. Natural Res., Inc.*, 865 S.W.2d 203, 206 (Tex. App.—Waco 1993, no writ) (first and second criteria) (emphasis in original); TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(a) (third criterion); s*ee generally Sonnier*, 909 S.W.2d at 481–82 (generally endorsing *Williams*'s analysis).

The jury found that the acid addition system was an improvement to real property, and Jenkins does not challenge that finding in this appeal. Therefore, the second criterion is satisfied. The parties' arguments focus on whether the first criterion is satisfied. We hold that it is not and therefore do not reach the third criterion, i.e., the issue of whether this is an action arising out of an unsafe condition of real property or a deficiency in the construction work. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(a) (applying to actions "arising out of a defective or unsafe condition of real property or a deficiency in the construction or repair" work), *with id.* § 16.008(a) (applying to actions "arising out of a defective or unsafe condition of the real property, the improvement, or the equipment").

1. **Occidental did not conclusively establish that it was "a person who constructs or repairs an improvement to real property"**

Occidental bore the burden of proof on its statute of repose defenses. *See Ryland*, 924 S.W.2d at 121; *Nexen*, 224 S.W.3d at 416. Unless an affirmative defense is established as a matter of law, the defendant also bears the burden of obtaining the jury findings necessary to support the elements of the defense.

17

*Texaco*, 729 S.W.2d at 805–06; *Whitney Nat'l Bank*, 122 S.W.3d at 207. Over Jenkins's objection, Occidental declined to request any jury findings with respect to its role in the construction of the acid addition system. Thus, unless Occidental conclusively established that it constructed the acid addition system, its failure to obtain a favorable jury finding is fatal. *See Texaco*, 729 S.W.2d at 805–06.

Section 16.009 expressly limits its application to claims against individuals or entities who "construct[] or repair[] an improvement." TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(a). A person who merely constructs a product that is later annexed to real property is not a person who "constructs or repairs an improvement." *Sonnier*, 909 S.W.2d at 481 (holding statute of repose did not apply to manufacturer of tomato chopper because it had not annexed device to real property). It is the annexation that transforms the product from personalty to an improvement, and the performance of that task by a third-party does not transform the product's designer and manufacturer into one who "construct[ed] . . . an improvement." *See id.* Occidental did not build the acid addition system or annex it to real property—that work was performed by a third-party contractor. For the same reason that a manufacturer whose product is later annexed to real property is not a constructor under section 16.009, the construction and installation of the acid addition system by a third-party contractor does not transform Occidental into an

18

entity that "constructs . . . an improvement to real property." TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(a).

Occidental's payment for the installation does not convert Occidental into a constructor. Occidental did not conclusively establish that it was a "direct actor" in the construction or repair of the acid addition system. *See Petro Stopping Ctrs., Inc. v. Owens-Corning Fiberglas Corp.*, 906 S.W.2d 618, 620 (Tex. App.—El Paso 1995, no writ) ("The statute only grants repose to the direct actors in the construction or repair of an improvement to real property."). Nor is Occidental an entity in the construction industry. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009) (noting that the statute "only precludes suits against persons or entities in the construction industry that annex personalty to realty"). Section 16.009 does not apply to a claim against a defendant "who may have performed some function in relation to an improvement to real property but who cannot be considered a constructor or repairer of the improvement." *Williams*, 865 S.W.2d at 207.

Thus, Occidental did not conclusively establish that it "construct[ed] or repair[ed] an improvement to real property," and Jenkins's claim against Occidental is not within the scope of section 16.009 according to its plain language. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.009.

## 2. Occidental did not conclusively establish that it performed a role equivalent to that of a general contractor

Occidental observes that statutes of repose are remedial in nature and, therefore, are given a "comprehensive and liberal construction rather than a technical construction which would defeat the purpose motivating its enactment." *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 921 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). Occidental cites three cases to support its contention that the phrase "a person who constructs or repairs" should be liberally construed to include a property owner who provides the conceptual design, provides the parts, and hires a third-party contractor to construct or repair an improvement: *Fuentes v. Continental Conveyor & Equipment Co., Inc.*, 63 S.W.3d 518, 521–22 (Tex. App.—Eastland 2001, pet. denied); *Reames v. Hawthorne-Seving, Inc.*, 949 S.W.2d 758, 763 (Tex. App.—Dallas 1997, pet. denied); and *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 922 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). The cases cited by Occidental recognize that section 16.009's protection extends to parties who, though they did not personally perform the construction work at issue, were nevertheless contractually responsible for the construction work and subject to liability in the lawsuit based on that responsibility. We conclude that the reasoning of these cases is not applicable here because (a) Occidental did not conclusively establish that it was contractually responsible for the construction

20

work or that it acted as its own general contractor and (b) its liability does not stem from any purported involvement in, or responsibility for, the construction process.

*Reames* addresses the applicability of section 16.009 in a situation when a general contractor is sued for construction work performed by its subcontractor. 949 S.W.2d at 763. The court reasoned that because the general contractor "bore ultimate responsibility to [the property owner]" for construction of the conveyor belt and "was involved in the actual construction of the conveyor belt," it was entitled to protection under section 16.009. *Id.* The analysis in *Reames* expressly turns on the defendant's position as the general contractor and its responsibility to the property owner. *Id.* (stating that the defendant's "relationship to the installation was that of a general contractor. Such a general contractor is protected under section 16.009."). Occidental did not conclusively prove that it had such a role.

The *Fuentes* court relied on *Reames* to hold that a conveyor belt system manufacturer hired by the property owner to "supervise and assist" in the installation of its conveyor belt system was protected by section 16.009. *Fuentes*, 63 S.W.3d at 521–22 (citing *Reames*, 949 S.W.2d at 763). The *Fuentes* court reasoned that the property owner hired the manufacturer "to supervise the installation because it wanted [the manufacturer] to bear the ultimate responsibility for the proper installation" of its own equipment. *Id.* The dual role of supervising

21

and assisting the construction amounted to constructing an improvement. *Id.* (citing *Reames*, 949 S.W.2d at 763).

The reasoning of *Reames* and *Fuentes* is not applicable here. In both cases, the defendants did not physically "hammer the nails and turn the screws," but they had "ultimate responsibility" for the construction, and their liability stemmed from their responsibility for that work. *See Reames*, 949 S.W.2d at 763; *Fuentes*, 63 S.W.3d at 521–22; *see also Jackson v. Coldspring Terrace Prop. Owners Ass'n*, 939 S.W.2d 762, 768–69 (Tex. App.—Houston [14th Dist.] 1997, writ denied) (holding that statute of repose barred claims against successor-in-interest of licensor of entity that constructed pool because its potential liability "could only vicariously result from [its predecessor-in-interest] 'putting out' itself as the manufacturer of a defective construction of the pool"). The same is not true here. The evidence does establish that Occidental prepared the general conceptual design of the acid addition system and hired and paid third-party contractors to draft the detailed designs that specified "how it was actually to be constructed" and to actually construct the system. However, Occidental did not present evidence, or even argue below, that it acted as its own general contractor. *Cf. Reames*, 949 S.W.2d at 763.[9] Nor did Occidental present evidence that it bore the ultimate

---

[9] There is some evidence that Occidental conducted a safety check on the project at some point; however, the timing, scope, details, and purpose of that safety check are not in the record.

responsibility for actual construction of the acid addition system. *Cf. Fuentes*, 63 S.W.3d at 521–22; *Reames*, 949 S.W.2d at 763.

In *McCulloch*, the Dallas Court of Appeals applied the prior version of the statute, article 5536(a), to claims brought against a community developer, Fox & Jacobs. The *McCulloch* court articulated this test for determining whether an owner is entitled to protection from the statute of repose for contractors:

> The statute was intended to apply to litigation against architects, engineers, and others involved in designing, planning or inspecting improvements to real property, as distinguished from materialmen and suppliers and from tenants and owners who possess or control the property. Thus, the critical inquiry is whether Fox & Jacobs' role in constructing the pool was more analogous to that of a builder or to an owner or supplier.

696 S.W.2d at 922 (internal citations omitted).

Unlike this case, Fox & Jacobs's role was more consistent with that of a general contractor: Fox & Jacobs not only hired contractors to create a conceptual layout and perform certain portions of the work in constructing the pool, an engineer to design the pool, and a contractor to perform the actual construction, it also supervised, inspected, and approved the construction process. *Id.* Additionally, though Fox & Jacobs was the nominal owner of the pool at the time of construction, it did not and never intended to retain possession or control over the pool after construction was completed. *Id.* Thus, Fox & Jacobs "functioned not as an owner but as a builder or supervisor." *Id.* On this basis, the court concluded:

23

"By furnishing money, planners, engineers, and subcontractors for the construction of the pool, and by performing supervisory and inspection duties, Fox & Jacobs functioned as a 'person performing or furnishing construction . . . of . . . [an] improvement.'" *Id.* (ellipsis and bracketed materials in original).

*McCulloch* does not apply under these facts.[10] Occidental did not act in a role analogous to the developer in *McCulloch*. Occidental was the property owner, not a general contractor or other third-party hired to manage and oversee various aspects of the construction work.[11] The "critical inquiry" under *McCulloch*— whether Occidental's role in the construction was more analogous to that of a

---

[10]   *McCulloch* was decided under the prior version of section 16.009, which expressly extended protection to persons who "furnish[]" construction or repair services. 696 S.W.2d at 922. When the legislature recodifed the statute of repose in 1985, it changed the text of the statute from applying to "any person performing or furnishing construction or repair" to "a person who constructs or repairs," though the term "furnishing" remains in section 16.009's title. *Compare* Act of May 14, 1975, 64th Leg., R.S., ch. 269, § 1, 1975 Tex. Gen. Laws 649, 649, *with* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3254.

[11]   In its motion for rehearing, Occidental states that the Court's analysis is internally inconsistent because "it holds that Occidental is liable because it acted as a contractor (rather than an owner), but that it is not protected by the statute of repose [section 16.009] because it acted as an owner (rather than a contractor)." This statement inaccurately conflates three roles into two, omitting its role as "designer" of the acid addition system. The role of designer has its own, separate statute of repose (section 16.008) and therefore is not covered under section 16.009, which covers construction professionals. It is Occidental's role as designer upon which the jury based its liability finding, and it is this role that is distinct from Occidental's role as previous owner of the premises. This role brings with it the protection of section 16.008 (rather than 16.009), but Occidental is not entitled to section 16.008's protection here because the statute only protects design work by licensed professionals and the jury found that Occidental's design work was performed by an unlicensed engineer.

24

builder or that of an owner or supplier—weighs against Occidental. *See McCulloch*, 696 S.W.2d at 922.[12]

We conclude that *Reames*, *Fuentes*, and *McCulloch* do not support Occidental's interpretation of section 16.009 as applying to this case.[13] And, as noted above, we further conclude that Occidental did not conclusively establish that it actually constructed the acid addition system or acted as its own general contractor overseeing the construction. Accordingly, we hold that the trial court erred in entering judgment in favor of Occidental on its statute of repose affirmative defense under either section 16.008 or 16.009.

We sustain Jenkins's second issue.

---

[12] We do not imply that an owner who constructs an improvement to real property may not rely on section 16.009 when it personally performs construction work or, under the line of cases cited by Occidental, when it has general-contractor-like involvement in, and responsibility for, the construction work even if another party actually performs the work. But, as *McCulloch* demonstrates, mere ownership of the premises and actions appurtenant to such ownership is not sufficient; the owner must also take on a role analogous to that of a general contractor or builder, not merely that of an owner or supplier. *McCulloch*, 696 S.W.2d at 922.

[13] In its motion for rehearing, Occidental states: "To avoid applying the statute's protection to these undisputed facts, the Court reasons that (1) the statute excludes from its protection prior owners of property who did not own, control, or possess the property at the time of the injury; and (2) the statute does not protect parties against personal-injury claims alleging negligent design." But we reach neither holding. Instead, we note that section 16.009 applies only to claims against "a person who constructs or repairs improvement to real property," and conclude that Occidental did not conclusively establish that it constructed the acid addition system. While courts have, in some cases, recognized that a general contractor or developer may rely on the statute even though it hired a subcontractor to perform the actual labor, the rationales for applying the statute in those cases are not present here.

25

**Occidental's Cross-Points**

Occidental raises three cross-points, arguing that if the trial court's judgment cannot be affirmed on the ground upon which it was rendered, it is nevertheless the correct outcome on these alternative grounds: (1) the only cause of action available to Jenkins is a premises liability action for which he failed to lead, prove, or obtain a jury finding; (2) Jenkins cannot recover under a negligent design theory because he did not prove the elements of a products liability claim; and (3) Jenkins's claim is barred by the statute of limitations. We reject each of these alternative grounds.

### A. Jenkins's claim arises out of Occidental's design of the acid addition system, not any ownership or control of the premises

Occidental contends that because Jenkins was injured while operating an improvement to real property, his claim sounds exclusively in premises liability. Because Occidental no longer owned the plant at the time of Jenkins's injury, Occidental asserts that it cannot be held liable for its negligent design of the acid addition system. We do not find support for Occidental's position in the cases on which it relies. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *McDaniel v. Cont'l Apartments Joint Venture*, 887 S.W.2d 167, 171 (Tex. App.—Dallas 1994, writ denied) (op. on reh'g); *Billmeier v. Bridal Shows, Inc.*, No. 02-08-00314-CV, 2009 WL 1176441, at *3 (Tex. App.—Fort Worth April 30, 2009, no pet.) (mem. op.).

26

*Keetch* and *Billmeier* do not involve injuries caused by improvements to real property; they involve injuries caused by a slippery spot on the floor. *Keetch*, 845 S.W.2d at 264; *Billmeier*, 2009 WL 1176441, at *2. These cases distinguish between injuries arising out of an owner or operator's contemporary negligent activity and injuries arising out of a premises defect. Unlike the issue presented in this appeal, the injured plaintiff's claims were against the defendant who owned or controlled the premises at the time of the accident and therefore had the ability to make safe or warn of the condition.[14] *See Keetch*, 845 S.W.2d at 264; *Billmeier*, 2009 WL 1176441, at *3–4.[15] These cases do not address whether premises liability claims are the only available claims when an injury results from the negligent design of an improvement to real property by a party who neither owns

---

[14] In a premises liability claim, the injured claimant, as a general rule, must establish that "the defendant possessed—that is, owned, occupied, or controlled—the premises where injury occurred." *Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 426 (Tex. 2011) (quoting *Wilson v. Tex. Parks and Wildlife Dept.,* 8 S.W.3d 634, 635 (Tex. 1999) (per curiam)).

[15] Taken out of context, *Billmeier*'s articulation of the distinction between negligent activity claims and premises defect claims may be read broadly. *See Billmeier*, 2009 WL 1176441, at *3 ("When the alleged injury is the result of the premises's condition, the injured party can only recover under a premises defect theory.") (citing *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992)). But read in context, the *Billmeier* court addressed the distinction between the "two situations" in which an "owner or occupier may be liable for negligence"— premises defects and negligent activities—not the world of potential liability for a non-owner, non-occupier of land. *See id.*

27

nor controls the premises at the time of the injury. *See Keetch*, 845 S.W.2d at 264; *Billmeier*, 2009 WL 1176441, at *3–4.[16]

*McDaniel*, on the other hand, does involve an injury caused by an improvement to land. 887 S.W.2d at 171. But *McDaniel* does not support Occidental's position. McDaniel died when a balcony at an apartment complex collapsed on top of her. *Id.* at 169. Her heirs sued the independent contractor who remodeled and extended the balcony eight years before it collapsed, the joint venture that owned the apartment complex at the time of remodeling, and the joint venture's individual members. *Id.* In the portion of the Dallas Court of Appeals's opinion relied on by Occidental, the court held that McDaniel could only recover

---

[16] Occidental asserts that *Keetch* holds that a person injured by a condition of real property may only bring a premises liability claim—not a negligent activity claim—even if the defendant is alleged to have negligently created the condition. We recognize that, "[a]t some point, almost every artificial condition can be said to have been created by an activity" and that negligent activities cannot be so broadly construed as to "eliminate all distinction between premises conditions and negligent activities." *Keetch*, 845 S.W.2d at 264. However, *Keetch* concerns claims against property owners and occupiers who have the ability to make the condition safe or warn of its existence. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) ("[P]remises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe."). The duty to make safe or warn does not apply to a former property owner. We decline to hold that a former property owner owes no duty, and we conclude that the best statement of the duty owed by a former, industrial property owner who created a dangerous condition through its own design employees is encapsulated in the general negligence principles that apply to any other design professional.

28

against the former property owners under a premises liability theory because her injury arose out of the condition of the balcony rather than concurrent negligent activity by the owners. *Id.* at 171–72. There was no claim that the former property owners designed or constructed the balcony, i.e., that they created the dangerous condition.[17] On the other hand, the jury found the independent contractor liable for his negligence in building the remodeled balcony. *Id.* at 170. The independent contractor did not appeal that finding.

Here, Occidental played two distinct roles—the role of the designer of the faulty improvement, who was subject to liability, and the role of the former premises owner, who was not subject to liability. But the jury's liability finding against Occidental relies on the first role and not the second role. Thus, Occidental is subject to liability only for its design work. [18]

---

[17]     There was a jury finding that the property owner was negligent in hiring and supervising the contractor. *McDaniel*, 887 S.W.2d at 170. Such a claim is not covered by *Strakos v. Gehring*, 360 S.W.2d 787, 795–96 (Tex. 1962), which we discuss below.

[18]     This Court has recently explained in another context that, when a party takes on multiple roles with respect to an event or transaction, the fact that one of those roles is one for which there is no liability (former premises owner) does not shield the party from liability arising out of the other roles (designer of a faulty acid addition system). *See Strebel v. Wimberly*, 371 S.W.3d 267, 279–81 (Tex. App.— Houston [1st Dist.] 2012, pet. filed) (holding that role as limited partner with no duty did not insulate party from liability for other, non-passive role in partnership, which did give rise to duty).

We see no reason why the fact that Occidental's acid addition system was annexed to real property would alleviate Occidental from duties otherwise owed with respect to the safety of the system's design. *Cf.* RESTATEMENT (SECOND) OF TORTS § 385 ("One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.").[19] In cases where an improvement to real property was designed by a licensed engineer, section 16.008's statute of repose has been applied to place a time limit on just such liability. *E.g., Galbraith Eng'g*, 290 S.W.3d at 869 (applying statute of repose to cut off liability of engineer who designed drainage system for home). Nor do we see any reason why Occidental's status as a former premises owner would alleviate it from duties owed with respect to the negligently designed acid addition system, which continued to pose a danger after Occidental no longer owned the premises.

---

[19] According to Occidental, this portion of the opinion "incorrectly suggests" that section 385 of the Restatement "provides that property owners are forever liable for improvements made during their ownership." We make no such suggestion. Our holding is expressly dependent on Occidental's role in the design of the acid addition system, not its role as previous owner of the plant. Put another way, we do not hold that Occidental would have owed any duty to Jenkins if it had merely owned the plant at the time of the acid addition system's design and installation.

*Cf. Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 54 (Tex. 1997) (stating that "a person who creates a dangerous condition owes" duty of care even if person is not in control of premises at time of injury); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997) ("[U]nder some circumstances, one who creates a dangerous condition, even though he or she is not in control of the premises when the injury occurs, owes a duty of care."); *Strakos v. Gehring*, 360 S.W.2d 787, 795–96 (Tex. 1962) (observing that liability of premises owner or operator for failure to warn of or make safe dangerous premises condition does not necessarily supplant liability of creator of danger).

Occidental contends that *Roberts v. Friendswood Development Co.*, 886 S.W.2d 363, 367–68 (Tex. App.—Houston [1st Dist.] 1994, writ denied), "precludes liability" against Occidental because that case holds that a former property owner is not liable for dangerous conditions created by the owner before the conveyance.[20] We disagree. In *Roberts*, the plaintiff broke his neck diving into

---

[20] Occidental contends that this Court held in *Roberts* that the former property owner, Friendswood, was not liable even though it "created a dangerous condition on the property before selling it." The opinion's introduction does state that the plaintiff alleged that the former property owner "created or permitted the creation of an unreasonably dangerous condition." *Id*. at 365. But the opinion discusses only one action by Friendswood that could be considered the creation of a dangerous condition: many years before the accident, when it still owned the park, Friendswood dredged the bottom of Lake Houston within fifty yards of the pier. *Id*. at 368.

To be more precise, the plaintiff's pleading stated that an uneven dangerous contour on the bottom of the lake was "created by . . . [the construction contractor]

31

a lake from a pier located at a park. *Id*. at 364. Friendswood conveyed the park to Kingwood Service Association, which owned the park at the time of the accident. *Id*. at 366. The pier and boat ramp from which the plaintiff dived were on property belonging to the City of Houston. *Id*.[21] The Court began by observing that former owners of real property generally "are not liable for injuries caused by dangerous conditions on real property after conveyance," a proposition we reaffirm today. *Id*. at 367−68. We observed that liability for a dangerous condition on a property "arises only if the party has ownership, possession, control, *or* had itself created the dangerous condition." *Id*. at 366 (emphasis added) (citing *Davis v. Esperado Mining Co.*, 750 S.W.2d 887, 888 (Tex. App.—Houston [14th Dist.] 1988, no writ)). Because Friendswood did not own the premises at the time of the accident,

---

at the express request and on behalf of [the owner]," not the developer. Clerk's Record, Cause 01-93-492-CV, vol. 2, at 252 (Plaintiff's Third Am. Original Pet., at 5). But the opinion discusses this allegation in connection with its analysis of whether Friendswood failed to disclose a dangerous condition—an inquiry under a different exception to the general no-duty rule, the vendor liability recognized in certain situations by section 353 of the Restatement (Second) of Torts. *See Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 54 (Tex. 1997) (noting that *Roberts* relied on *First Fin. Dev. Corp. v. Hughston,* 797 S.W.2d 286, 290–91 (Tex. App.—Corpus Christi 1990, writ denied), which in turn relied on RESTATEMENT (SECOND) OF TORTS § 353, a provision the Texas Supreme Court has never adopted). Jenkins did not submit a jury issue for liability under section 353. Thus, we do not discuss whether the developer had independent liability for the creation of the condition.

[21] The Court therefore agreed with Friendswood's assertion that it "never owned" the pier and boat ramp and that they were located on land "belonging to the City of Houston." See Clerk's record, Vol. 1 at 20.

any duty it owed "d[id] not stem from an ownership of the premises." *Id.* That

conclusion is consistent with our holding that Occidental does not have any

liability arising out of its status as a former owner. But we did not discuss the

exception for the creation of a dangerous condition on property in *Roberts*, nor did

we discuss—because the plaintiff-appellant's brief did not cite it—*Strakos*. 886

S.W.2d at 366–67; See Brief of Appellant in Cause No. 01-93-492-CV.[22] *Roberts*

does not answer whether a former plant owner who uses architects in its employ to

---

[22] Similarly, Occidental's reliance on *First Financial Development Corp. v. Hughston*, 797 S.W.2d 286, 291 (Tex. App.—Corpus Christi 1990, writ denied), is misplaced. The plaintiff there also did not rely on *Strakos* or its progeny. Instead, the plaintiff sought to impose liability through the vendor-liability provisions in sections 352 and 353 of the Restatement. *Id.* at 290−91. Although the *Hughston* court stated that the plaintiff could not avoid the Restatement's limitations on a developer's vendor-liability by "[a]droit phrasing of the pleadings to encompass design defects, per se negligence, or any other theory of negligence," *id.* at 291, there is no indication of any allegation or evidence that the developer designed or otherwise created the allegedly dangerous stairwell. To the contrary, the court affirmed the portion of the judgment holding the construction contractor liable for failing to comply with several building codes with respect to the design of the stairwell. *Id.* at 293.

In its motion for reconsideration, Occidental contends that we have misread the factual background and allegations in *Hughston* because the opinion "plainly states that the plaintiff alleged that the developer engaged in 'various acts of negligence connected with the design, construction and maintenance of the stairway.'" We disagree. The opinion does not state that the developer engaged in these acts; it merely describes the allegations generally against the defendants as a whole, one of whom was a construction company. There is no indication in the opinion that the developer itself designed the stairs.

33

design an improvement to property should be accountable under general negligence principles for that design work.

We therefore reject Occidental's contention that premises liability law bars Jenkins's claim against Occidental. We overrule Occidental's first cross-point.

**B.     Jenkins's claim is not a strict products liability claim against a product manufacturer**

Occidental next contends that, to recover for negligent design, Jenkins was required to establish the elements of a products liability claim, which Occidental identifies as requiring proof that (1) the acid addition system was a product, (2) the system was placed in the stream of commerce, and (3) Occidental was a manufacturer. Jenkins responds that these are elements of a claim for strict products liability, not his common law negligent design claim. There is no dispute that Jenkins cannot prevail on the strict products liability cause of action that he did not bring. The question is whether Texas recognizes a negligent design claim outside the bounds of a strict products liability claim against a manufacturer, and if so, whether a party bringing such a claim must prove the three elements challenged by Occidental here.

The Supreme Court of Texas has recognized that a claim for negligent design or negligent manufacturing is legally distinct from a strict products liability claim. *See Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 437 (Tex. 1997) ("The [plaintiff's] negligent design and manufacturing claims are conceptually

34

distinguishable from the strict liability claims.").[23] Occidental relies on *American Tobacco* for the proposition that a negligent design claim can only be brought against a manufacturer, quoting a portion of the Court's opinion distinguishing negligent design claims from strict products liability claims: "While strict liability focuses on the condition of the product, '[n]egligence looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production.'" *Id.* (quoting *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995)). We do not read this quote as eliminating common law negligence claims against designers of products who are not manufacturers. The *American Tobacco* Court discussed the duties at issue in terms of a manufacturer's duties because the defendant in the case was a manufacturer. *See id.*

Texas courts have also recognized the general negligence duty owed by architects and engineers who perform design work but do not place their work in the stream of commerce (and thus are not subject to strict products liability).[24] *See Palmer v. Espey Huston & Assocs., Inc.*, 84 S.W.3d 345, 356 (Tex. App.—Corpus

---

[23] The Court further noted that a party cannot prevail on a negligent design claim without proving the existence of a safer alternative design. *Am. Tobacco*, 951 S.W.2d at 437. Here, the jury's finding that Occidental's negligent design caused Jenkins's injury was predicated on the existence of a safer alternative design. Occidental has not challenged this jury finding.

[24] A "products liability action" is statutorily defined as an action "against a manufacturer or seller," each of which is defined only to include persons who placed products or component parts in the stream of commerce. TEX. CIV. PRAC. & REM. CODE ANN. § 82.001 (2), (3), (4) (West Supp. 2012).

35

Christi 2002, pet. denied) ("Because the breakwater was not put in the stream of commerce, strict liability in tort does not apply. Rather, this case is about the design of a breakwater to which we apply principles of ordinary negligence."); *Hanselka v. Lummus Crest, Inc.*, 800 S.W.2d 665, 666 (Tex. App.—Corpus Christi 1990, no writ) (stating, with respect to allegedly defective design of plant's sludge disposal system, "This is not a product defect case in which, because products have been put into the stream of commerce, strict liability applies; but rather, it is a case about design of a factory to which we apply principles of ordinary negligence.").

We note that the legislature has enacted separate statutes of repose for strict liability claims against sellers and manufacturers and claims against design professionals who design improvements to real property. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 16.008(a) (ten-year statute of repose for design professionals), *with id.* § 16.012(b) (West 2002) (fifteen-year period of repose for manufacturers and sellers). Additionally, chapter 150 of the Civil Practice and Remedies Code places certain procedural requirements on claims against licensed or registered architects, engineers, land surveyors, and landscape architects. *See id.* §§ 150.001–.003 (West 2011). Cases governed by this chapter have involved negligence claims against non-manufacturers based on the design of improvements to real property. *See, e.g.*, *Sharp Eng'g v. Luis*, 321 S.W.3d 748, 752 (Tex. App.— Houston [14th Dist.] 2010, no pet.) (concluding section 150.002 was not satisfied

with respect to carpenter's claim against engineers for negligent design of roof that carpenter fell through while performing framing work); *Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, No. 03-10-00805-CV, 2011 WL 1562891, at *5 (Tex. App.—Austin Apr. 20, 2011, pet. denied) (mem. op.) (holding that section 150.002 was satisfied with respect to hotel owner's claims against former owner's architect for negligent design of foundation and drainage).

Occidental relies on *New Texas Auto Auction Services, L.P. v. Gomez De Hernandez*, for the proposition that Jenkins was required to prove that the acid addition system was a product and that Occidental placed it in the stream of commerce. *See* 249 S.W.3d 400, 402 (Tex. 2008) (holding that auctioneer who handled sale of car between seller and buyer could not be held liable for allegedly defective condition of car). But *New Texas Auto Auction* did not involve a common law negligent design claim. *See id.* Instead, it involved claims against an auctioneer for strict products liability and for negligent failure to replace the tires on a car it auctioned off. *See id.* The *New Texas Auto Auction* Court held that the auctioneer had no duty to inspect or replace the tires and could not be held liable in strict products liability because it was not actually the seller of the vehicle. *See id.* at 404. The Court observed that the limitation of strict liability claims to products placed in the stream of commerce "arises from the justifications for strict liability itself." *Id.* at 403–04, 405. Jenkins did not assert a strict liability claim. Occidental

cites to no case that holds or otherwise indicates that the stream-of-commerce requirement has be extended to ordinary negligence actions brought against non-manufacturers.

We conclude that Jenkins asserted a claim for negligence in the design of the acid addition system, not a claim for strict products liability. The elements that Occidental asserts Jenkins has not proved are not elements of his claim. The jury found that Occidental was negligent in its design of the system—including a safer alternative design finding—and that this negligence proximately caused Jenkins injuries. Occidental has not challenged these jury findings. Nor has Occidental asserted that it did not owe a duty to Jenkins with respect to its design of the acid addition system, except to the extent that it argues that only a property owner or operator may be held liable for injuries caused by improvements to real property—a contention we have rejected.

We overrule Occidental's second cross-point.

## C.    The statute of limitations does not bar Jenkins's claim

Finally, Occidental contends that the trial court's take-nothing judgment can be affirmed on the alternative ground that Jenkins's claim was barred by the statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2010). Jenkins was injured on April 21, 2006. Jenkins joined Occidental to this

action on July 21, 2008, more than two years after the injury.[25] Jenkins points out that his joinder of Occidental was timely because it was less than sixty days after another defendant, Sperian, named Occidental as a responsible third-party. *See id.* § 33.004(e) (repealed 2011) ("If a person is designated under this section as a responsible third-party, a claimant is not barred by limitations from seeking to join that person, even though such joinder would otherwise be barred by limitations, if the claimant seeks to join that person not later than 60 days after that person is designated as a responsible third-party.").[26] Occidental argues that Jenkins should not be permitted to rely on the joinder rule for responsible third parties because Sperian's naming of Occidental as a responsible third-party was the result of collusion between Sperian and Jenkins. But Occidental does not support this accusation with evidence of collusion in the record. We therefore decline to consider whether section 33.004(e) would be rendered inapplicable by collusive behavior between litigants. *See* TEX. R. APP. P. 38.1(i) (requiring that parties support their appellate arguments with citations to the record when appropriate); *Nguyen v. Kosnoski,* 93 S.W.3d 186, 188 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

---

[25] Jenkins had previously sued and nonsuited Occidental.

[26] The legislature has now repealed section 33.004(e), and it will not apply to claims filed on or after September 1, 2011. Acts of May 30, 2011, 82nd Leg., R.S., ch. 203, §§ 5.02, 6.01–.02, 2011 Tex. Sess. Law Serv. ch. 203.

We overrule Occidental's third and final cross-point.

**Occidental's Arguments on Rehearing**

On rehearing, Occidental shifts its primary focus from the statutes of repose to its first alternative ground for affirming the trial court's judgment—that a premises defect claim is the exclusive negligence claim available for an injury arising out of a "condition" of property rather than concurrent negligent activity. Occidental correctly distinguishes a premises owner, operator, or controller's two types of liability: premises defect liability and negligent activity liability. But Occidental did not own, operate, or control the plant when Jenkins was injured, and its liability does not arise out of any ownership, operation, or control of the premises. Forcing injured third parties like Jenkins to frame negligent design claims as if they were premises liability claims either expands the duty to "warn or make safe" to architects, engineers, and other design professionals or it insulates them from liability to third parties injured by their negligent work. This is not and has not ever been the law in Texas.

**A. Occidental's liability is neither contingent on, nor relieved by, Occidental's prior ownership of the plant**

In its first issue on rehearing, Occidental asserts that the Court's holding here "upends settled Texas law by permitting recovery against a former premises owner years after the property's conveyance." As discussed above, the jury held

Occidental liable based on its negligence in designing the acid addition machine, not based on its previous ownership or control of the plant.

We are unpersuaded by Occidental's reliance on a 1986 California case—*Preston v. Goldman*, 720 P.2d 476 (Cal. 1986)—to argue that former premises owners have no liability for their on-premises design work. In *Preston*, visitors to a private home sued the home's former owners after their child, left unattended, fell in a pond designed and built by the former owners. *Id.* at 476–77. The pond was not enclosed by a fence but was surrounded by a twelve inch wall. *Id.* at 476. The trial court ruled that the former homeowners had no liability as a matter of law under general negligence principles, but submitted a jury question under the vendor-liability provisions contained in sections 352 and 353 of the Restatement (Second) of Torts. *Id.* at 477, 479. The jury found no liability under that question. *Id.* at 477. The plaintiff appealed contending that the former owners were liable under general negligence principles because they created the danger and that the vendor-liability jury issue was incorrect. *Id.*

*Preston* is inapplicable here for three reasons. First, the analysis in *Preston* centers on the defendants' status as private homeowners rather than professional engineers or contractors, and the *Preston* court expressly limited its holding to that scenario. *See id.* at 487 n.10 ("Our holding here relates only to the liability of 'do-it-yourself' home improvers and is not intended to affect, establish, or diminish

41

any liability of commercial builders, contractors or renovators.").[27] Indeed, part of the court's rationale was that California homeowners generally would not be insured for an injury suffered after conveyance of the property. *Id.* at 483. No such analysis has been offered here. Second, unlike *Strakos*, *Preston* focused on "ownership and control as a fundamental requirement for ascribing liability," rather than the creation of a dangerous condition. *Id*. at 483. *Strakos* also rejected the accepted work doctrine, a doctrine that eliminated a defendant's liability after work was accepted because the defendant no longer controlled the property. *Strakos*, 360 S.W.2d at 790 (explaining that liability should not exist day before contractor's work is accepted and end day it is accepted and that, while one "who assumes control over a dangerous condition left by a contractor may be liable," it "does not necessarily mean that he who creates the danger should escape liability"). Third, the defect in *Preston*—the design and construction of the pool— was "a patent one as a matter of law." 720 P.2d at 485.

Moreover, other jurisdictions have faced more factually analogous circumstances and have rejected arguments similar to Occidental's. These cases

---

[27] Our opinion also should not be read to impose liability on former home owners who, while they owned the home, created a dangerous condition through their design or construction work or their participation in design or construction work. Whether *Strakos* recognizes liability under those circumstances is not before us; we only address *Strakos*'s application for a dangerous condition created by an industrial plant owner who employed design professionals and who designed the improvement using its own staff.

have imposed liability on former plant owners whose negligent design work resulted in an injury to a third-party after the sale of the plant to a new owner. *See Stone v. Untied Eng'g, a Div. of Wean, Inc.*, 475 S.E.2d 439, 443–44 (W. Va. 1996) (holding former plant owner liable for its negligent design of conveyor belt); *Dorman v. Swift & Co.*, 782 P.2d 704, 706–08 (Ariz. 1989) (holding former plant owner liable for negligent design of conveyor belt); *see also Carroll v. Dairy Farmers of Am., Inc.*, No. 2-04-24, 2005 WL 405719, at *6 (Ohio Ct. App. 3rd 2005) (not designated for publication) (finding fact issue as to whether former plant owner was negligent in its design, fabrication, and installation of support platform).[28]

## B. The distinction between negligent activity and premises defect liability governs an owner or controller's liability

In its second issue on rehearing, Occidental argues that Jenkins's injury was caused by an unreasonably dangerous premises condition and therefore will only support a premises liability claim. Occidental invokes the distinction between premises defect liability and negligent activity liability—two distinct categories of negligence liability a premises owner or controller may have, which are governed

---

[28] Occidental relies on *Papp v. Rocky Mountain Oil & Minerals, Inc.*, 769 P.2d 1249, 1252 (Mont. 1989) in its motion for rehearing. *Papp* held that the former owner of an oil separation facility who had dismantled and rebuilt the facility was not liable for its reconstruction due to the "accepted work doctrine." *See id.* at 1256–57. But Texas long ago rejected the "accepted work doctrine." *See Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 424 (Tex. 2011) (citing *Strakos*, 360 S.W.2d at 791).

by different liability standards. *See, e.g.*, *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775 (Tex. 2010) ("As to landowners, we have recognized negligent-activity and premises-liability theories of liability.").[29] But Occidental neither owned nor controlled the plant at the time of Jenkins's injury. For the reasons discussed below, we decline to impose the elements of a premises defect claim on the jury's negligent design finding. *See e.g.*, *Barzoukas v. Found. Design, Ltd.*, 363 S.W.3d 829, 838 (Tex. App.—Houston [14th Dist.] 2012, pet. filed) (op. on reh'g) (finding question of fact on negligence claim against engineering firm based on foundation design work); *Goose Creek Consol. Indep. Sch. Dist. of Chambers & Harris Cntys., Tex. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 495 (Tex. App.—Texarkana 2002, pet. denied) (holding that school district could recover against plumbing subcontractor for negligent construction of pipes); *J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 93 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding that contractor owed general negligence duty to third-party by dangerous condition contractor created on road); *Thomson v. Espey Huston & Assocs., Inc.*, 899 S.W.2d 415, 422 (Tex. App.—Austin 1995, no writ) (reversing summary

---

[29] Generally, a premises owner or controller has premises defect liability if its past negligent conduct created an unreasonably dangerous condition on the premises that caused the plaintiff's injury; but if the plaintiff's injury is caused by the owner or controller's contemporaneous negligent conduct, the owner or controller has negligent activity liability. *See, e.g.*, *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775 (Tex. 2010); *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 751 (Tex. 1998).

judgment on negligence claim against engineering firm for design work except as barred by economic loss rule); *McKinney v. Meador*, 695 S.W.2d 812, 814–15 (Tex. App.—Tyler 1985, writ ref'd n.r.e.) (affirming judgment against engineers and contractors based on negligent design and construction of airport runway); *Hyatt Cheek Builders-Eng'rs Co. v. Bd. of Regents of Univ. of Tex. Sys.*, 607 S.W.2d 258, 264 (Tex. Civ. App.—Texarkana 1980, writ dism'd) (holding that general negligence question properly submitted issue of contractor's negligent installation of water pipe).

## 1.    *Wyckoff v. George C. Fuller Contracting Co.*

On rehearing, Occidental relies on a recent case out of the Dallas Court of Appeals: *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157 (Tex. App.—Dallas 2011, no pet.). In *Wyckoff*, a visitor at a home sued the homeowner and homebuilder after she fell on the home's steps. *Id.* at 164. She asserted a premises liability claim against the homeowner and a general negligence claim against the homebuilder. *Id.* The court held, however, that the injured plaintiff's claims against both defendants sounded exclusively in premises liability.[30] *Id.* And although the plaintiff did not contend that the homebuilder owned, occupied, or

---

[30]    The *Wyckoff* court cited *Keetch* and *Scroggs v. Am. Airlines, Inc.*, 150 S.W.3d 256, 263 (Tex. App.—Dallas 2004, no pet.). But both of those cases dealt with the distinction between negligent-activity and premises-defect theories of recovery against a premises owner. *See Keetch*, 845 S.W.2d at 264; *Scroggs*, 150 S.W.3d at 263. Neither addressed the duty owed by a non-owner, non-operator who was negligent in providing professional design services.

controlled the home at the time of her injury, the court held that the homebuilder owed her the same duty that the homeowner did: "the duty owed to a licensee." *Id.* The court then affirmed a summary judgment for the defendant on the ground that the plaintiff had actual knowledge of the dangerous conditions of the stairs—poor lighting, non-uniform shape, and lack of a handrail. *Id.* at 165–66.

We disagree with the *Wyckoff* court's conclusion that a homebuilder, who neither owns nor controls the premises, owes the same duty the homeowner owes to licensees on the premises. To the extent the *Wyckoff* court may be read as holding that any claim for an injury not caused by contemporaneous negligent activity may only be brought as a premises defect claim, we would disagree with that holding as well. To the extent the *Wyckoff* court held that a plaintiff cannot recover for a design defect of which she had actual knowledge at the time of the injury, that holding is not implicated by the facts of this case.

### 2. We decline to adopt *Wyckoff*'s extension of premises liability

The existence of a legal duty is a threshold requirement for negligence liability—whether sounding in general negligence or premises defect liability. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). "Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). One "special relationship" that gives rise to a duty to take action to

46

prevent harm to others is the relationship between a premises owner or operator and those present on the premises; within this context, the law imposes a duty on the premises owner or operator to take action to make the premises reasonably safe or to warn invitees and licensees of an unreasonable danger. *See State v. Williams*, 940 S.W.2d 583, 584 (Tex. 1996) (per curiam). The law imposes this same duty on a general contractor in control of the premises. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985).

But the Texas Supreme Court has never extended the duty to warn or make safe to defendants who did not own, occupy, or control the premises at the time of the plaintiff's injury. *See Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 426 (Tex. 2011) (holding that engineering firm, whose work was dictated by and complied with contractual specifications, had no duty to warn of dangerous condition on premises); *Mathis*, 189 S.W.3d at 845 (holding that engineer did not owe duty to keep premises safe and did not owe any duty with respect to hole on premises engineer neither created nor agreed to make safe); *see also Martinez*, 941 S.W.2d at 911 (holding that defendant properly established that it did not owe premises liability duty because it did not own, occupy, or control premises where injury occurred but that defendant was not entitled to traditional summary judgment because it failed to address duty arising out of alleged creation of dangerous

condition). In the absence of Supreme Court authority for doing so, we decline to expand premises defect liability to non-owners, non-controllers of premises.

Having declined to extend premises defect liability to non-owners, non-occupiers of premises, we likewise decline to extend the premises-defect/negligent-activity dichotomy to claims against such defendants. We do so for three reasons. First, it encourages expansion of premises defect duties to parties who neither own nor control the premises, as demonstrated in *Wyckoff*, 357 S.W.3d at 163–64. Second, if the test for whether premises defect principles apply were merely whether the injury resulted from a concurrent negligent activity or a "condition of premises," without regard to the nature of the defendant or the defendant's duties, a wide variety of claims would be collapsed into premises defect claims. Third, the elements of the duty owed by an owner, occupier, or controller of premises are not necessarily compatible with the duties (if any) owed by other parties, such as design professionals.

For all of these reasons, we hold that Occidental did not owe a duty to keep the plant in a safe condition or to warn those present at the plant of dangerous conditions on the premises, but Occidental did owe a duty to be non-negligent in its engineering and design of the acid addition machine. Because the jury held that Occidental breached the latter duty, we are not persuaded by Occidental's arguments on rehearing.

48

## Motion for En Banc Reconsideration

In its April 2013 motion for *en banc* reconsideration, Occidental raises the Texas Supreme Court's holding in *In re Texas Department of Transportation*, 218 S.W.3d 74, 75 (Tex. 2007), as a basis for affirming the trial court's judgment. In that case, the Court held that a plaintiff's claim against TxDOT for its negligent design decisions regarding a guardrail sounded exclusively in premises liability, not negligence. *Id*. at 77−78. The design claim against TxDOT could not proceed under general negligence principles because the design was not "an activity contemporaneous with the occurrence." *Id.* at 78. The plaintiff's claim was "based on the property itself being unsafe," which is a premises liability claim. *Id*. at 77−78. We do not read that *per curiam* opinion as limiting the scope of *Strakos*, which it did not discuss. Similarly, we do not interpret it as revising the long-standing application of general negligence principles for claims against designers and constructors of dangerous property conditions by creating the sweeping proposition that even persons who do not own, possess, or control a premises but who create a dangerous condition on it can only be sued for premises defects. Rather we interpret *Texas Department of Transportation* as another in a long-line of Texas cases that precludes a plaintiff from recasting a premises liability claim— a claim against the owner, occupier, or party in control of the premises (in that case the area adjacent to the road where the guardrail was installed)—as a negligence

claim.[31] We are not persuaded that *Texas Department of Transportation* requires us to change our disposition of this case.

## Conclusion

This is an unusual case in which a former plant owner performed its own design work for an improvement to real property. Section 16.008 is the statute of repose that would typically apply to and limit the time for bringing a claim against a defendant in Occidental's position, but Occidental is not entitled to that defense because the jury found that it allowed an unlicensed, unregistered engineer to design the acid addition system. Occidental's efforts to invoke Section 16.009, as an alternative to Section 16.008, are the equivalent of trying to fit a square peg into a round hole—Occidental did not "construct[] or repair[]" the acid addition system, and we will not read this language to mean something it does not say. Occidental's alternative grounds for affirming the trial court's judgment require us to treat Jenkins's claim against Occidental as if it were based on Occidental's status as the former property owner or as if it were a strict liability products claim. But these are not the claims Jenkins pleaded and tried.

---

[31] The Attorney General's brief in that case framed the issue in those terms by quoting the plaintiffs' allegations that TxDOT "'shared control over the bridge'" during the "'relevant time period.'" Brief on the Merits of Texas Dep't of Transportation at 3, No. 06-0289 (July 28, 2006).

We therefore reverse the trial court's take-nothing judgment and remand for entry of judgment in favor of Jenkins based on the jury's findings on liability, proportionate responsibility, and damages, as well as other matters necessary to calculate damages and interest.


Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp and Brown.